Rodger THORNTON, Plaintiff–Appellant,

v.

Gregory BROWN, Jimmie Mifflin, Jr., and Michael Kelly, Defendants–Appellees.

No. 94–1258.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 1, 1994.

Decided Feb. 3, 1995.

David M. Stahl, Karen Owen Dunlop (argued), Sidley & Austin, Chicago, IL, for plaintiff-appellant.

Nuviah Shirazi, Springfield, IL, Mary E. Welsh (argued), Office of the Atty. Gen., Civ. Appeals Div., Chicago, IL, for defendants-appellees.

Before CUDAHY, ESCHBACH, and MANION, Circuit Judges.

ESCHBACH, Circuit Judge.

Plaintiff Rodger Thornton appeals from an adverse judgment entered by the district court in his 42 U.S.C. § 1983 action against three officers of the Illinois Department of Corrections for allegedly violating his rights, under the Eighth and Fourteenth Amendments, to be free from cruel and unusual punishment. Thornton contends that the magistrate judge made several key factual findings which were clearly erroneous. We affirm.

## I.

Although the two parties provided conflicting trial testimony, the following background facts are undisputed. On September 26, 1989, while incarcerated at Menard Correctional Center ("Menard"), Rodger Thornton suffered multiple stab wounds as the result of an attack by other inmates. At the time of the attack, Thornton was performing his cleaning duties in the West Cellhouse on Gallery 5, the floor on which his cell was located. Defendants Kelly, Brown and Mifflin were all on duty serving as Menard correctional officers. Defendant Kelly was assigned to Gallery 5, where he was responsible for taking the morning count and escorting the inmates to their designated work areas. Defendants Brown and Mifflin were assigned to the West Cellhouse "catwalk," a narrow walkway above the perimeter of the cellhouse, where each was responsible for patrolling with a shotgun and overlooking the various galleries in which the prisoners were housed. Finally, it is undisputed that on September 26, 1989, a prison riot broke out at Menard at approximately 11:45 a.m., just prior to the time the attack on Thornton occurred.

According to Thornton's testimony at trial, Defendant Kelly took possession of the keys to Gallery 5 shortly before 11:45 a.m. and unlocked the gallery door, thereby allowing a group of inmates to attack Thornton on Gallery 5. Thornton further testified that Defendants Brown and Mifflin watched the attack occur and refused to take any action to stop the assault. Thornton stated that the assault continued until Officer Edwards, a "catwalk" officer from the East Cellhouse, arrived at the scene and pointed his shotgun at the attackers.

Defendants' trial testimony was contrary to that of Thornton. Defendant Kelly testified that he dropped off his keys with the door officer shortly after 7:00 a.m. when he escorted the inmates out of Gallery 5, and he did not return to the West Cellhouse until about 2:45 p.m.—several hours after the attack on Thornton took place. Defendants Brown and Mifflin both testified that they did not witness the attack on Thornton be-

cause their attention was focused on Gallery 1, where a race riot broke out involving over forty African–American and Hispanic inmates. Officers Brown and Mifflin stated that once they became aware of the attack on Thornton, they fired a warning shot, levelled their guns at the attackers and protected Thornton from any further assault. The defense also called Officer Edwards as a witness, and he testified that he simply helped Officer Brown keep the attackers away from Thornton.

On March 9, 1990, Thornton filed this civil rights action under 42 U.S.C. § 1983, claiming that Defendants Kelly, Brown and Mifflin had violated his Eighth Amendment rights by facilitating the other inmates' attack on him. Pursuant to 28 U.S.C. § 636(c), the parties consented to allow all proceedings to be conducted by a United States Magistrate Judge, and a bench trial was held on January 19, 1994. On January 21, 1994, the magistrate judge ordered that judgment be entered for the defendants and against Thornton. In this order of the district court, the magistrate judge stated:

> The Court concludes that defendants ... did not subject the plaintiff to cruel and unusual punishment on September 26, 1989. Testimony at trial established that defendants Brown and Mifflin took active steps to prevent injury to the plaintiff after becoming aware of the danger that he was in during the riot. As established by the testimony, no defendant observed the attack in which the plaintiff was stabbed. Both defendant Brown and Mifflin took active steps to prevent continued attacks on the plaintiff during the riot. As indicated by the testimony, defendant Kelly was not present in the West Cellhouse during the attack. Since defendant was in the knit shop during the riot, he cannot be held liable for the attack upon the plaintiff.

Order, Jan. 21, 1994, at 8–9. Thornton filed a timely appeal, claiming that several of the magistrate's key factual findings were clearly erroneous. We have jurisdiction under 28 U.S.C. § 1291.

## II.

As this court noted in *Goka v. Bobbitt,* 862 F.2d 646, 649 (7th Cir.1988), "the Eighth Amendment prohibition against cruel and unusual punishment has been expanded under the Due Process Clause of the Fourteenth Amendment to impose upon both federal and state correctional officers and officials the obligation to take reasonable steps to protect inmates from violence at the hands of other inmates." *Id.* Indeed, it is well established that "[a] prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan,* — U.S. —, —, 114 S.Ct. 1970, 1974, 128 L.Ed.2d 811 (1994) (citations omitted). Thus, "deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle v. Gamble,* 429 U.S. 97, 105, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976).

Thornton, in his § 1983 cause of action, attempted to prove at trial that the defendants violated his Eighth Amendment rights by acting with "deliberate indifference" to his physical safety; however, the district court entered judgment against him. On appeal, Thornton challenges several of the court's factual findings. Specifically, Thornton contends that Magistrate Judge Cohn, who presided over the bench trial in the district court, erred in finding (1) that defendant Kelly did not unlock the door to Gallery 5 directly prior to the attack on Thornton and (2) that defendants Brown and Mifflin did not witness the attack.

Following a bench trial, we review findings of fact under a clearly erroneous standard. *Selan v. Kiley,* 969 F.2d 560, 567 (7th Cir.1992); *see* Fed.R.Civ.P. 52(a). "Fed. R.Civ.P. 52(a) directs that a district court's finding of fact 'shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses.' " *Lange v. United States,* 31 F.3d 535, 539 (7th Cir.1994) (quoting *Ambrosino v. Rodman & Renshaw, Inc.,* 972 F.2d 776, 784 (7th Cir. 1992)). "A finding is clearly erroneous when, although there may be some evidence to support it, 'the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.' " *Lange,* 31 F.3d at 539 (quoting *Savic*

*v. United States,* 918 F.2d 696, 700 (7th Cir.1990), *cert. denied,* 502 U.S. 813, 112 S.Ct. 62, 116 L.Ed.2d 38 (1991)). The trial court's choice between two permissible views of the evidence cannot be considered clearly erroneous. *Lange,* 31 F.3d at 539; *Rennie v. Dalton,* 3 F.3d 1100, 1106 (7th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1054, 127 L.Ed.2d 375 (1994).

■ First, Thornton claims that the magistrate committed clear error in finding that defendant Kelly did not unlock the door to Gallery 5 prior to the attack by the other inmates. To support this claim, Thornton argues that "[t]he evidence indicating that Kelly had possession of keys to Gallery Five shortly before the riots commenced at 11:45 a.m., and that he used those keys to unlock the doors to Gallery Five, *is substantially more credible than the evidence to the contrary.*" Pl. Br. at 7 (emphasis added). Clearly, Thornton misconstrues the applicable standard of appellate review, and he seems to be under the misguided perception that this court is to act as a second trier of fact.

The magistrate judge's findings of facts included the following:

> While plaintiff claimed that defendant Kelly was present on 5 gallery during the riot and opened a door allowing him to be assaulted, the Court finds more credible the testimony that in accordance with his normal routine, that defendant Kelly turned his keys of [sic] to the "crank" officer C/O Belcher and escorted inmates over to prison industries.

Order at 3. The trial court plainly rejected Thornton's version of the facts, and we give due regard to the court's opportunity to judge the credibility of the witnesses. *See* Fed.R.Civ.P. 52(a). Moreover, there is ample evidence in the record to support the magistrate judge's finding.

Defendant Kelly testified that he was not in the West Cellhouse at the time of the riot. According to his testimony, he escorted the inmates out of Gallery 5 just after 7:00 a.m., and he did not return to the West Cellhouse

until later that afternoon. Officer Kelly explained that, in conformity with the normal routine of his shift, he locked the door behind him as he escorted the inmates out of Gallery 5, he dropped the key off with the door officer and he spent the rest of the day away from the West Cellhouse serving as the security officer in the knit shop. In addition, defendant Kelly suggested that the door to Gallery 5 may have been opened by other prison officers throughout the day in order to allow inmates on cellhouse cleaning duty to enter and exit the gallery. Defendant Kelly's testimony was corroborated by the testimony of other correctional officers, and Officer Brown added that the gallery door may have been unlocked at the time of day in question because some inmates were returning to their cells after lunch. In short, the magistrate's finding that defendant Kelly did not unlock the door to Gallery 5 just prior to the attack on Thornton was not clearly erroneous.

■ Thornton also contends that the magistrate committed clear error in finding that defendants Brown and Mifflin did not witness the attack. Thornton again focuses on his own version of the facts and simply concludes that the evidence shows that Officers Brown and Mifflin were aware of the attack. The magistrate judge, however, explicitly found that the "[t]estimony at trial indicated that no correctional officer witnessed the stabbing of the plaintiff." Order at 4. Once again, the magistrate judge's finding is supported by the evidence.

At the time of the attack, defendants Brown and Mifflin were serving as "catwalk" officers, which means that they were assigned to observe the various galleries of the cellhouse in order to ensure the safety and security of the institution. Prior to the attack on Thornton, a prison riot broke out and defendants Brown and Mifflin had to stop a fight involving approximately fifty inmates on Gallery 1. Brown and Mifflin testified that they did not observe the attack on Thornton, which occurred on Gallery 5, because their attention was diverted by other disturbances arising during the riot.[1] Defendants Brown

1. Thornton's counsel acknowledged at oral argument that this riot, which was racial in nature,

spread throughout the West Cellhouse, and the

and Mifflin both stated that they learned of Thornton's injuries only after the incident occurred. The magistrate judge based his factual findings on what he perceived to be the more credible testimony, and we are not left "with the definite and firm conviction that a mistake has been committed." *Lange*, 31 F.3d at 539 (quoting *Savic*, 918 F.2d at 700). We therefore conclude that the court's findings of fact were not clearly erroneous.

## III.

For these reasons, we AFFIRM the judgment of the district court.

prison guards consequently had "their hands full."