65 F.3d 170
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Alfred L. STONE, Plaintiff-Appellant,
v.
RELIABLE MECHANICAL, INC., Defendant-Appellee.
 No. 94-2830.
 United States Court of Appeals, Seventh Circuit.
 Submitted Aug. 10, 1995.*
Decided Aug. 22, 1995.
 
 Before FLAUM, RIPPLE and KANNE, Circuit Judges.
 
 ORDER
 
 1
 Alfred Stone is a plumber and an African-American. In September 1991 Stone responded to a newspaper advertisement seeking plumbers. The ad was placed by Reliable Mechanical, Inc. ("Reliable"). Stone sent Reliable his resume, and Reliable attempted to verify his work references. Reliable's efforts were unsuccessful, so the personnel manager, Shirley Howard, tried to contact Stone to get additional reference information. She was unsuccessful despite repeated attempts.
 
 
 2
 On June 2, 1992, Stone saw another Reliable newspaper ad seeking plumbers on a project where Reliable was a contractor for DowElanco. Stone responded to the ad in person at the job site in Indianapolis. He brought his resume and a copy of his master plumber certification. In return he was given an application that he completed immediately at the job site. On June 11, 1992, Stone sent a certified letter to Reliable's headquarters in Louisville, Kentucky, informing them of his interest in the advertised plumber position in Indianapolis. In response, a Reliable employee from Louisville called Stone on June 16, and told him Reliable was not hiring. On that same day, Stone filed discrimination charges against Reliable with the Indiana Civil Rights Commission ("ICRC") asserting that he was not hired in September 1991 through June 16, 1992 because of his race. Still the same day, Stone received a call from Howard, who told him that Reliable was hiring replacement plumbers at the job site. She explained that she was unable to verify his work references in September 1991 when he first applied. Stone then gave Howard additional reference information and told her that he would take a drug test that was required in order to start work on the DowElanco site.
 
 
 3
 Two days later, Reliable sent Stone a letter informing him that they verified his references from his previous employers, and that he was now on the list of replacement plumbers. A week later on June 25, Howard called Stone and told him that he needed to take a drug test and that he was to begin working at the DowElanco site on June 29. Stone did not appear for work on June 29, but he called Howard that day and asked if he could postpone his start date until July 6. Howard agreed. On June 30, Stone took a drug test at the St. Vincent Hospital outpatient clinic.
 
 
 4
 Stone's ICRC discrimination complaint arrived at Reliable on July 2. The next day, Reliable's DowElanco project superintendent, Jeffrey Keeling; Reliable's president Bruce Duthie; and Howard, discussed Stone's discrimination charge. Howard informed Duthie and Keeling that Stone was to start work on July 6. Duthie told Keeling to "play it by the book" with Stone.
 
 
 5
 Stone arrived at the work site before 6:00 a.m. on July 6. Keeling informed Stone that to start work, Stone needed proof that he passed the drug test, and that he also needed plumbing tools and appropriate shoes. Stone had the shoes and the tools with him, but not drug test proof. Keeling told Stone he could get the proof at the clinic (which was approximately three miles away) and come back to the DowElanco site to start work. Keeling declined Stone's suggestion that, rather than Stone going to get the proof from the clinic, Keeling should call the clinic or Howard for verification of the drug test. Keeling gave Stone his business card and the telephone number at the site and instructed him to call if he had any problems.
 
 
 6
 As Stone was leaving the job site, he watched as Rodney Black, a Reliable superintendent working under Keeling, introduced Keeling to Leo Southworth, who was also starting work that day. Southworth is caucasian. Stone noted that Keeling did not ask Southworth for proof that he passed the drug test, but allowed him to start work anyway. Stone did not know that later the same day, Keeling learned that Black did not receive drug test proof from Southworth and that Keeling had to ask Southworth for the proof himself.
 
 
 7
 Stone went to pick-up the drug test proof, but the hospital lab was not open that early. Instead of waiting for the lab to open or calling Keeling as Stone had been instructed, Stone drove to the law library at Indiana University. Within six hours of appearing at the job site, Stone had prepared and filed an affidavit in federal district court requesting leave to proceed in forma pauperis in this civil rights lawsuit. The lawsuit charged that Reliable racially discriminated against Stone in violation of 42 U.S.C. Sec. 1981 when it did not hire him in September 1991, and when it required him to provide drug test proof before starting work. The lawsuit also alleged that Reliable discharged him in retaliation for his previously filed discrimination charges with the ICRC. The court interpreted this charge as one made pursuant to 42 U.S.C. Sec. 2000e-3(a).
 
 
 8
 The parties conducted a bench trial before the district court. Among others, Stone presented African-American witnesses who worked for Reliable at the DowElanco site. They testified that they saw racially derogatory graffiti in the portable toilets that were used by all the contractors on the job site, not just Reliable. In addition, they testified that they heard caucasian Reliable employees tell ethnic jokes in Keeling's presence. They testified that no black plumbers were working on the job site when Stone was seeking employment. They also testified they received worse treatment at the site than did caucasian employees. Among the evidence Reliable produced was proof that it was subject to a DowElanco policy requiring every worker on the job site to pass a drug test before starting work.
 
 
 9
 The court issued a memorandum opinion setting out its findings of fact and conclusions of law. The court determined that Stone failed to prove his Sec. 1981 case or his Sec. 2000e-3(a) case, and granted judgment in favor of Reliable. Stone appeals that decision pro se. On appeal he argues that the district court's finding that Keeling was the project superintendent at the job site is clearly erroneous. (Findings of Fact p 8). Stone also challenges the district court's legal conclusions that Stone did not prove either his discrimination or retaliation claims.
 
 ANALYSIS
 
 10
 When reviewing a trial court judgment following a bench trial, we will reverse the court's factual findings only if they are clearly erroneous. Fed.R.Civ.P. 52(a); Keller v. United States, No. 94-2633, slip op. at 5 (7th Cir. June 29, 1995). If the trial court's interpretation of the evidence is permissible, it will not be clearly erroneous, despite other possible interpretations of that evidence. Anderson v. City of Bessemer City, 470 U.S. 564, 573 (1985); Thornton v. Brown, 47 F.3d 194, 196 (7th Cir.1995). We review the district court's legal conclusions de novo.
 
 
 11
 A. The section 1981 racial discrimination charge
 
 
 12
 Stone bears the burden of proving that Reliable refused to hire him in September 1991 because he is an African-American. Because Stone did not have direct evidence of discrimination, the district court applied the burden-shifting method set forth by the United States Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), to determine whether Stone proved his case. On appellate review, that method falls away and we consider whether the record supports the ultimate finding that Stone's race was not the reason for Reliable's employment action. Roper v. Peabody Coal Co., 47 F.3d 925, 928 (7th Cir.1995).
 
 
 13
 Under McDonnell Douglas, Stone needed to prove by a preponderance of the evidence that he belongs to a protected group; that he applied and was qualified for Reliable's advertised job opening; that he was rejected; and that after he was rejected, Reliable continued looking for applicants with equivalent qualifications. McDonnell Douglas, 411 U.S. 792. The district court determined that Stone did not make a prima facie case that Reliable's decision not to hire him in September 1991 was racially motivated. The district court found that Reliable did not know that Stone was an African-American at the time Stone responded to the September 1991 advertisement. Stone has no proof that Reliable knew of his race at that time. The district court's finding was not clearly erroneous, and its subsequent legal conclusion that Stone failed to make a prima facie case regarding the September 1991 employment claim is affirmed.
 
 
 14
 Stone's next claim is that he was discriminated against due to the disparate application of the drug test policy. Applying the McDonnell Douglas method, the district court determined that requiring drug test proof from Stone but not from Southworth before working at the job site was disparate treatment for purposes of establishing a prima facie Title VII case.[1]
 
 
 15
 Because Stone set out a prima facie case, he created a rebuttable presumption that he was the victim of racial discrimination. Reliable overcame that presumption by producing evidence that it had a legitimate nondiscriminatory reason for its actions. Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 254-55 (1981). Stone was unable to fulfill his burden to persuade the district court that Reliable's proffered reason was a pretext, and that the real reason he was not allowed to start work on the site was because of his race. St. Mary's Honor Center v. Hicks, 113 S.Ct. 2742, 2749 (1993); Sample v. Aldi Inc., No. 94-2954, slip op. at 5 (7th Cir. July 28, 1995). Stone's remaining burden in the district court was to establish a lack of credence in Reliable's proffered reason and to persuade the court that it was pretextual. He could achieve that by showing that the proffered reason 1) had no basis in fact; 2) did not actually motivate his treatment; or 3) was insufficient to warrant the behavior. See Cliff v. Board of School Commissioners, 42 F.3d 403, 411 (7th Cir.1994).
 
 
 16
 We believe the evidence at trial supports the district court's decision that race was not the reason Stone was not allowed to start work on the site without drug test proof. Reliable produced evidence at trial that it was required to enforce the DowElanco policy that all workers on the job site must pass a drug test before starting work. Reliable established that DowElanco was unwavering on this issue. Reliable also established that the initial failure to get that proof from Southworth was an error--remedied as soon as it was noted. Reliable produced a legitimate, nondiscriminatory reason for requiring Stone to produce the drug test proof before working. The record supports the district court's decision that the DowElanco policy, not Stone's race, was the reason he was not allowed to start work without the drug test proof.
 
 B. The Sec. 2000e-3(a) retaliation claim
 
 17
 The district court appropriately applied the same burden shifting method used in the discrimination claim to decide Stone's retaliation claim. See Dunning v. Simmons Airlines, Inc., No. 94-2689, slip op. at 12 (7th Cir. July 31, 1995). To make a prima facie case, Stone needed to show that he was engaged in statutorily protected expression; that he suffered an adverse employment action by Reliable; and that a link existed between the protected expression and the adverse action. Dey v. Colt Constr. and Dev. Co., 28 F.3d 1446, 1457 (7th Cir.1994).
 
 
 18
 Stone alleged that his ICRC discrimination charges lead to his discharge by Reliable. Nobody disputes that the ICRC complaint is statutorily protected speech, but Stone did not prove the second element--that Reliable fired him. Stone walked away from the DowElanco site and was expected to return with drug test proof in hand. If he encountered any problems, he was told to call Keeling. Stone never picked-up his drug test results, never called Keeling, and never went back to the site. Stone was not fired--he walked off the job. The district court held that Stone failed to make his prima facie case. We agree. Because Stone was not fired, his retaliation claim cannot stand.
 
 
 19
 The district court decision is AFFIRMED in all respects.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Cir.R. 34(f). No such statement having been filed, the appeal is submitted on the briefs and the record
 
 
 [1]
 Stone argues vehemently that the district court erroneously held that Keeling was not the project superintendent overseeing Southworth's first day at the job site. (Conclusions of Law p 9). This decision, Stone argues, wrongfully excuses Keeling's failure to immediately demand drug test proof from Southworth. But Stone also argues that the distinction in supervision (Stone being supervised by the head of the project) proves that Stone was being treated differently because of the ICRC charges and his race. The district court's conclusion is not legally significant, however, because Reliable rebutted the presumption of discrimination set out in Stone's prima facie case