**Chester BOYCE, Plaintiff,**

v.

**J.W. FAIRMAN, et al., Defendants,**

No. 96 C 3703.

United States District Court,
N.D. Illinois,
Eastern Division.

Oct. 29, 1998.

---

881

Chester Boyce, Joilet, IL, pro se.

O. Randolph Bragg, Horwitz, Horwitz & Associates, Chicago, IL, for plaintiff.

Lauren Klein, Allen Stewart Kirsh, Cook County State's Attorney, Chicago, IL, for defendants.

## MEMORANDUM OPINION AND ORDER

LEVIN, United States Magistrate Judge.

At issue before the court is Defendants' Motion to Dismiss Plaintiff's First Amended Complaint pursuant to Rules 12(b)(1) and 12(b)(6). The Motion was brought by Defendants J.W. Fairman ("Fairman"), Former Executive Director of the Cook County Department of Corrections, and Lt. Jeffery Malek ("Malek") and Lt. Leroy Moore ("Moore") of the Cook County Department of Corrections ("CCDC"). For the reasons stated below, Defendants' Motion is denied as to Counts I and III and granted as to Count II with prejudice.[1]

---

1. As to Defendants' claim that the court strike Plaintiff's prayer for punitive damages against Defendants, the court finds that the punitive damages claim falls as to Defendant Fairman, but stands as against Defendants Moore and Malek.

## FACTUAL SUMMARY

On or about June 1, 1994, Plaintiff Chester Boyce ("Boyce"), an inmate at the CCDC, was attacked by several inmates in cell 4 of Division I, Cell Block C, Tier C–4 and beaten by those inmates for about twenty minutes. (Compl.¶¶ 14–15.) As a result of the attack, Boyce suffered sever injuries to his body, face and particularly his eyes. Boyce was told by his assailants that he would be killed if he reported the attack to CCDC officials. (Compl.¶ 16.) On the following day, Boyce's condition was observed by an officer at CCDC who reported the matter to Defendant Lt. Moore. However, Defendant Moore allegedly refused to see Boyce or to investigate the matter. (Compl.¶¶ 18–20.) Sergeant Healey and Lt. Moore arrived on the Tier but refused to see Boyce. Lt. Moore refused to investigate the matter, stating: "The nigger is still alive, ain't he?" (Compl.¶¶ 19–20.) From June 1 through June 7, 1994, Boyce remained in his cell in an attempt to avoid further attack by other inmates. On June 7, 1994, Boyce went to the security bars and asked a tier officer to see the Tier Sergeant in order to request a move to another tier. (Compl.¶¶ 21–22.)

On June 8, 1994, after being observed by a tier officer, Boyce was sent to the Cermak Health Care Unit, where Dr. Patrirnakos examined his injured eye. (Compl.¶¶ 24–25.) Dr. Patrirnakos prescribed eye drops for Boyce and said that he would like to conduct a follow-up examination of his eye the next day. Boyce was then returned to CCDC and directed to return to his cell in Tier C–4. Boyce told Defendant Malek that he had been attacked in Tier C–4 and that he was in fear for his life on Tier C–4. He asked Defendant Malek to place him in protective custody, but Malek allegedly refused to do so and ordered his return to Tier C–4.[2] (Compl.¶¶ 28–30.)

On June 14, 1998, "yard" was called at the CCDC. Boyce asked to be excused from "yard" because he was afraid of being attacked. However, his refusal was denied because the tier officer said that "yard" was mandatory and all inmates had to go. Boyce was subsequently attacked by several in-

mates upon returning from "yard" on the stairwell leading to the tiers. (Compl. ¶¶ 33–37.) On or about June 28, 1998, Boyce was reassigned to Division G–2–H. (Compl.¶¶ 41–42.)

Plaintiff's eye was re-injured as a result of the June 14 attack. On numerous occasions following this June 14 attack, Plaintiff asked the named Defendants for permission to see the eye doctor at sick call. These requests were denied. (Compl.¶ 44.) Plaintiff was finally given permission to see a doctor on September 1, 1994, at which time Dr. Patrirnakos prescribed bifocals. Nevertheless, Plaintiff lost total permanent vision in his left eye about two weeks after his meeting with Dr. Patrirnakos. (Compl.¶¶ 44, 47–48.)

In Count I of the First Amended Complaint, Plaintiff alleges that movants and other named defendants' failure to place him in protective custody resulted in an attack on him by inmates and injury to his eye in violation of his civil rights pursuant to 42 U.S.C. § 1983. Plaintiff alleges that following the initial assault on him, movants were informed of this serious inmate assault on him, informed that he was in fear of his life, and were requested by him to be placed in protective custody. Movants denied Plaintiff's request to be placed in protective custody, and as a result, he was shortly thereafter attacked again by inmates and suffered further injury on or about June 14, 1994. (Compl.¶¶ 69–71.) In Count II, Plaintiff alleges that movants neglected their duties under Illinois law by failing to put him in protective custody after the initial inmate attack, which resulted in severe and permanent damage to his body. In Count III, Plaintiff alleges that movants breached their duty to provide adequate medical care to him in violation of his civil rights pursuant to 42 U.S.C. § 1983. As is pertinent here, he claims that movants had a duty to provide medical care to him following the attack he suffered on June 14, 1994. He also alleges that movants were aware of the seriousness of the condition of his eye following the June 14, 1994 attack. (Compl.¶¶ 78–79.) Defendant/movants move to dismiss Counts I, II

2. Boyce eventually was assigned to H Block, Tier One, in Division One. (Compl.¶ 31.)

and III of Plaintiff's First Amended Complaint against them.

## STANDARD OF REVIEW

On a motion to dismiss, the court takes all of the well-pleaded factual allegations as true and draws all reasonable inferences in the light most favorable to the plaintiff. *See, e.g., Wilczynski v. Lumbermens Mut. Cas. Co.,* 93 F.3d 397, 401 (7th Cir.1996). A complaint will not be dismissed on a motion to dismiss unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle him or her to relief. *Id.* A complaint need not set forth all relevant facts or recite the law. All that is required is a short and plain statement showing that the party is entitled to relief. FED.R.CIV.P. 8(a); *Doherty v. City of Chicago,* 75 F.3d 318, 322 (7th Cir.1996). A plaintiff in a suit in federal court need not plead facts. Conclusions may be pleaded as long as the defendant has at least minimal notice of the claim. FED.R.CIV.P. 8(a)(2); *Jackson v. Marion County,* 66 F.3d 151, 153–54 (7th Cir.1995).

The Seventh Circuit has recently held:

Under the federal rule of notice pleading, " 'all the Rules require is a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and *the grounds upon which it rests.'* " *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993) (*quoting Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (footnote and citation omitted)) (emphasis added). For fair notice to be given, "a complaint must at least 'include the operative facts upon which a plaintiff bases his claim.' " *Lucien v. Preiner,* 967 F.2d 1166, 1168 (7th Cir.1992) (*quoting Rodgers v. Lincoln Towing Service, Inc.,* 771 F.2d 194, 198 (7th Cir.1985)). A plaintiff "need not plead facts; he can plead conclusions. [However,] the conclusions must provide the defendant with at least minimal notice of the claim." *Jackson v. Marion County,* 66 F.3d 151, 153–54 (7th Cir.1995). The issue we review is whether "sufficient facts [have been] pleaded to allow the district court to understand the gravamen of the plaintiff's complaint."

*Doherty v. City of Chicago,* 75 F.3d 318, 326 (7th Cir.1996).

*Kyle v. Morton High School, et al.,* 144 F.3d 448, 454–55 (7th Cir.1998); *See also Bennett v. Schmidt,* 153 F.3d 516, 518 (7th Cir.1998).

## ANALYSIS

Defendants Fairman, Malek and Moore move to dismiss Plaintiff's First Amended Complaint on a variety of grounds. First of all, they argue that Plaintiff's allegations in Counts I and III are against Defendants wholly in their official capacity and not in their individual capacities. Second, they argue that, assuming *arguendo* that the court finds that Plaintiff has plead against Defendants in their individual capacities, Plaintiff has failed to plead cognizable individual capacity claims in Counts I and III. Third, Defendants move to dismiss on the ground that Plaintiff has failed to allege a cognizable state law claim in Count II against Defendants. Finally, movants argue that Plaintiff's claim for punitive damages must be stricken as against them.

### I. Allegations in Counts I and III Against Defendants in Official Capacities

Defendants argue that Plaintiff has not specified that he is suing them in their individual capacities, and therefore, his suit against Defendants solely in their official capacities must be dismissed. "In the absence of any express statement that the parties are being sued in their individual capacities, an allegation that the defendants were acting under color of law generally is construed as a suit against the defendants in their official capacities only." *Yeksigian v. Nappi,* 900 F.2d 101, 104 (7th Cir.1990). *See also Meadows v. Indiana,* 854 F.2d 1068, 1069 (7th Cir.1988); *Kolar v. County of Sangamon,* 756 F.2d 564, 568 (7th Cir.1985). In this case, Plaintiff's First Amended Complaint has failed to specify that Defendants are being sued in their individual capacities.

However, "where the complaint alleges the tortious conduct of an individual acting under color of state law, an individual capacity suit plainly lies, even if the plaintiff failed to spell out the defendant's capacity in the complaint." *Hill v. Shelander,* 924 F.2d 1370, 1374 (7th Cir.1991). "Personal-capacity

suits seek to impose personal liability upon a government official for acts he takes under color of state law. Official capacity suits, in contrast, 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Id.* at 1372 (*quoting Kentucky v. Graham,* 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985)). "The Seventh Circuit determined that if a Section 1983 complaint fails to indicate the defendant's capacity, then the court will determine the capacity based on the nature of the complaint." *Doe 1 v. Peterson,* 1998 WL 603274 *2 (N.D.Ill.1998). In this case, Plaintiff sufficiently alleges in his First Amended Complaint that Defendants Moore and Malek were aware that Plaintiff was the target of and vulnerable to assaults by other prisoners but failed to take reasonable steps to abate the risk of attack and place him in protective custody. As a result, he claims that he was attacked and injured. Plaintiff also adequately alleges, for pleading purposes, that Defendants breached their duty to provide adequate medical care to him, which resulted in his total loss of vision in one eye. (Compl.¶¶ 71, 80–81.) Viewing the complaint as a whole, in the light most favorable to the non-movant, the court concludes that an individual capacity suit does plainly lie against Malek and Moore despite Plaintiff's failure to specifically state his intention to sue these Defendants in their individual capacities.[3]

■ However, as against Defendant Fairman, the then Executive Director of the CCDC, Plaintiff's claim is best construed as an official capacity suit.[4] In order for a plaintiff to succeed in an official capacity suit under § 1983, the plaintiff must allege that he or she suffered a deprivation of a constitutionally protected interest, and that the deprivation was caused by an official policy, custom or usage of the municipality. *Monell v. Dept. of Social Services of New York City,* 436 U.S. 658, 690–91, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978). "[N]ormally, the mere allegation of a single act of unconstitutional conduct by a municipal employee will not support the inference that such conduct was pursuant to official policies. On the other hand, where the plaintiff alleges a pattern or a series of incidents of unconstitutional conduct, then the courts have found an allegation of policy sufficient to withstand a dismissal motion." *Powe v. City of Chicago,* 664 F.2d 639, 650 (7th Cir.1981). In this case, Plaintiff's First Amended Complaint alleges that it was the practice and policy of the Defendants at CCDC to refuse protective custody requested by *prisoners* who had been beaten by other inmates, and that it was the practice and policy of Defendants at CCDC to deny specialized medical care to *prisoners.* (Compl.¶¶ 66–67.) The court thus finds that Plaintiff has adequately plead a cause of action against Defendant Fairman, in his official capacity. *See, e.g. Baxter by Baxter v. Vigo County School Corp.,* 26 F.3d 728, 735 (7th Cir.1994); *Monell,* 436 U.S. at 690, 98 S.Ct. at 2035; *Saint Louis v. Praprotnik,* 485 U.S. 112, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988) (citations omitted).

## II. Allegations in Counts I and III Against Defendants Malek and Moore in Their Individual Capacities

■ As it now pertains to Defendants Moore and Malek, these Defendants contend

---

**3.** In order to establish personal liability in a Section 1983 action, "it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." *Kentucky v. Graham,* 473 U.S. at 166, 105 S.Ct. at 3105. "However, that showing is not enough for an official capacity suit, where the action alleged to be under color of state law must be linked with the entity's policy or custom." *Id. See also, Hill v. Shelander,* 924 F.2d 1370 (7th Cir.1991); *Oklahoma City v. Tuttle,* 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985); *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Because this case against Defendants Malek and Moore is construed as one in which Plaintiff has alleged personal liability, it is not necessary for Plaintiff to link these Defendants' action under color of state law with the entity's policy or custom, as they urge this court to require. (*See* Def.Mem. at 3–4.)

**4.** A fair reading of the Complaint manifests that it fails to state a claim upon which relief can be granted against Defendant Fairman based on personal liability. Moreover, Plaintiff's Response addresses only the individual capacity claims against Defendants Malek and Moore. Fairman, in his individual capacity, cannot be held liable for the acts of his subordinates. *Gossmeyer v. McDonald, et al.,* 128 F.3d 481, 495 (7th Cir. 1997) (citations omitted). Therefore, the claim against Fairman is properly analyzed as an official capacity claim.

that Plaintiff has failed to plead cognizable individual capacity claims against them in Counts I and III. Plaintiff must prove two elements in order to successfully advance his individual capacity claims under 42 U.S.C. § 1983:(1) that the defendants were acting under color of state law; and (2) that the conduct of the defendants deprived the plaintiff of a federal right. *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981).[5] Plaintiff must allege facts that the Defendants were personally involved in the deprivation of his constitutional rights. *Gossmeyer v. McDonald*, 128 F.3d 481, 494 (7th Cir.1997); *See Black v. Lane*, 22 F.3d 1395, 1401 (7th Cir.1994). "[A]n official meets the 'personal involvement' requirement when she acts or fails to act 'with a deliberate or reckless disregard of plaintiff's rights or if the conduct causing the constitutional deprivation occurs at her direction or with her knowledge or consent.'" *Id* at 1401. *See also Soto v. Johansen*, 137 F.3d 980, 981 (7th Cir.1998). "Moreover, there must be 'a causal connection, or affirmative link, between the misconduct complained of and the official sued.'" *Mitchell v. Fairman*, 1997 WL 224990, *2 (N.D.Ill.1997) (*quoting Estate of Porter by Nelson v. Illinois*, 36 F.3d 684, 688 (7th Cir.1994)). *See also Soto v. Johansen*, 137 F.3d at 981.

The Supreme Court has held that "[m]isuse of power, possessed by virtue of a state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken 'under color of' state law ..." *United States v. Classic*, 313 U.S. 299, 326, 61 S.Ct. 1031, 85 L.Ed. 1368 (1941). Plaintiff alleged that Defendants Malek and Moore were acting under color of state law when they failed to act as alleged in the amended complaint (Counts I and III). These acts were related to Defendants' duties as sworn officers at the CCDC.

"In order to infer callous indifference when an official fails to protect a prisoner from the risk of attack, there must be a 'strong likelihood' rather than 'mere possibility' that violence will occur." *Estate of*

*Davis v. Johnson*, 745 F.2d 1066, 1071 (7th Cir.1984) (*quoting State Bank of St. Charles v. Camic*, 712 F.2d 1140, 1146 (7th Cir.1983), *cert. denied*, 464 U.S. 995, 104, S.Ct. 491, 78 L.Ed.2d 686 (1984)). "The failure to protect a prisoner on even a single occasion can give rise to liability where it can be inferred that an institutional employee should have realized that there was a strong likelihood of attack." *Watts v. Laurent*, 774 F.2d 168, 172 (7th Cir.1985).

Furthermore, the court in *Pippion v. Peters*, 1994 WL 530801, *3 (N.D.Ill.1994) stated that:

It is now a well-established principle of Eighth Amendment law, applied to the states through the Fourteenth Amendment, that prison officials have the duty to protect inmates incarcerated in a prison from assaults by other inmates. *Farmer v. Brennan*, 511 U.S. 825, 831–32, 114 S.Ct. 1970, 1976, 128 L.Ed.2d 811 (1994) (citations omitted). However, as the Supreme Court has recently reiterated, a constitutional violation is not implicated in every inmate-on-inmate attack. There are two conditions necessary for a constitutional violation to have taken place. *Id.* at 1977. The first is that the prison official's actions must have led to a 'sufficiently serious' deprivation of the inmate's Eighth Amendment rights; the second is that the official must have a sufficiently culpable state of mind in effecting the deprivation upon the inmate. *Id.* (*quoting Wilson v. Seiter*, 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991)).

In *Duckworth v. Franzen*, 780 F.2d 645, 653 (7th Cir.1985), *cert. denied*, 479 U.S. 816, 107 S.Ct. 71, 93 L.Ed.2d 28 (1986), the court emphasized that mistreatment of prisoners will only rise to the level of punishment for Eighth Amendment purposes if "the indifference to a prisoner's welfare [is] deliberate." *Id. See Walsh v. Mellas*, 837 F.2d 789, 793 (7th Cir.1988); *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976) (citations omitted). "Deliberate indif-

---

**5.** *Parratt v. Taylor was overruled* on other grounds in *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). The Court in *Daniels* said that the Due Process Clause is not implicated by a *negligent* act of an official who caused an unintended loss of or injury to life, liberty or property. The requirements of an individual capacity claim, however, were not overruled by *Daniels*.

ference entails something more than negligence, but is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result. Thus, it is the equivalent of acting recklessly." *Farmer,* 511 U.S. at 825, 114 S.Ct. 1970.

■ Here, at this notice not fact pleading stage, and reading the amended complaint in the light most favorable to the plaintiff, the court finds that the allegations of Counts I and III against Moore and Malek are sufficient to meet the applicable standards and survive a motion to dismiss.[6] *See, e.g. Walsh v. Mellas,* 837 F.2d 789 (7th Cir.1988); *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Matzker v. Herr,* 748 F.2d 1142 (7th Cir.1984); *Williams v. O'Leary,* 805 F.Supp. 634 (N.D.Ill.1992).

### III. Allegations in Count II

■ Count II of Plaintiff's First Amended Complaint alleges that Defendants had a duty to take reasonable care to prevent the June 14, 1994 assault and neglected their duty under Illinois law by failing to put Plaintiff in protective custody prior thereto as requested by Plaintiff. (Compl.¶¶ 74–75.) Defendants maintain that this claim should be dismissed as violative of the applicable statue of limitations. They argue that as public employees, they were covered by the Illinois Tort Immunity Act, Chapter 745 ILCS 10/1–101 *et. seq.,* and thus were able to avail themselves of the immunities and defenses therein. (*See* Def.Mot. at 15.) Defendants are included under the coverage of 745 ILCS 10/1–101 *et. seq.* as "employees" under 745 ILCS 10/1–202. The definition of "employee" includes a "present or former officer . . ." 745 ILCS 10/1–202.

Under applicable statute: "No civil action may be commenced in any court against a local entity or any of its employees for any injury unless it is commenced within one year from the date that injury was received

or the cause of action accrued." 745 ILCS 10/8–101. In Count II of Plaintiff's First Amended Complaint, as seen, Plaintiff has alleged that Defendants neglected their duty to prevent the June 14, 1994 attack. (Compl.¶¶ 74–75.) This District Court's General Rule 11(B)(a) provides that a complaint is filed on the date when it is delivered by the plaintiff to custodial authorities for forwarding to the court clerk. In this case, Plaintiff's Complaint was in an envelope that was postmarked June 12, 1996. (*See* Def. Mot. at 15.) The Complaint shows that Plaintiff signed it on June 11, 1996. Regardless of whether the Complaint was delivered to custodial authorities on June 11 or June 12, 1996, the cause of action, as seen, arose two years earlier, in June 1994. Plaintiff, therefore, has failed to file his Complaint within the one-year statute of limitations period as prescribed by 745 ILCS 10/8–101. Count II of Plaintiff's First Amended Complaint, accordingly, must be dismissed in its entirety.[7]

### IV. Punitive Damages Claim

■ "[A] plaintiff is typically precluded from recovering punitive damages in an official capacity suit absent a waiver of such immunity by federal or state law." *Hill v. Shelander,* 924 F.2d at 1373; *See Kolar v. County of Sangamon,* 756 F.2d 564, 567 (7th Cir.1985). "Punitive damages may be recovered in an individual capacity suit 'under the traditional bad faith standard,' and are recoverable against a government official acting in his individual capacity where the officer acts under color of state law in bad faith." *Id.* at 567 (*quoting Hutto v. Finney,* 437 U.S. 678, 700, 98 S.Ct. 2565, 2578, 57 L.Ed.2d 522 (1978)).

Accordingly, the count finds that the punitive damages claim must fall as to Defendant Fairman who, as stated, is a defendant solely in his official capacity, but that such claim(s)

---

6. The court also finds that Counts I and III, insofar as they relate to the actions for the June 14, 1994 attack, are not barred by this court's order of June 5, 1998. Also, Defendants' qualified immunity argument cannot be entertained herein, as it was first, inappropriately, raised in Defendants' Reply brief.

7. It is not necessary to reach conclusions on Defendants' other arguments for dismissal of Count II. Defendants state that if the court does not dismiss Count II as violative of the Tort Immunity Act statute of limitations, it should nevertheless be dismissed pursuant to Sections 4–103, 2–201 and 2–204 of the Tort Immunity Act.

stand against Defendants Moore and Malek who are defendants in their individual capacity. *See Walsh*, 837 F.2d at 801.

### CONCLUSION

In view of the foregoing, the Motion to Dismiss Counts I and III is denied, except the punitive damages claim(s) against Defendant Fairman (in Counts I and III) is stricken. Count II of the First Amended Complaint is dismissed with prejudice.