**Mark E. DAY, Plaintiff–Appellant,**

v.

**Michael RAVELLETTE and John Barro, Defendants–Appellees.**

No. 00–1257.

United States Court of Appeals, Seventh Circuit.

Submitted March 30, 2001.*

Decided May 31, 2001.

---

* After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R.App. P. 34(a)(2).

Before KANNE, ROVNER, and
WILLIAMS, Circuit Judges.

## ORDER

Indiana prisoner Mark Day sued four officials of the Wabash Valley Correctional Facility under 42 U.S.C. § 1983, alleging that they violated his civil rights by failing to protect him from another inmate. The district court granted summary judgment for three of the defendants and, following a bench trial, ruled in favor of the remaining defendant, correctional officer Michael Ravellette. Day appeals, arguing that the district court's judgment for Ravellette was against the weight of the evidence and that the court erred in granting summary judgment for defendant John Barro. We affirm.

On March 26, 1998, Day informed Ravellette that his cellmate, David Scott, had threatened him with physical harm if he was still in the cell when Scott returned later that afternoon. At Wabash Valley, correctional officers such as Ravellette do not have the authority to make bed moves; rather, their responsibility is to make counselors or officers-in-charge aware of any problems between inmates. In accordance with this policy, Ravellette immediately sought out prison counselors and advised them that Day felt threatened by his cellmate and wanted to be moved immediately. The counselors responded that they knew about the problem and were arranging a cell move for Day to take effect the following Monday (four days later). Ravellette then proceeded to inform the officer-in-charge of the situation.

Within minutes of reporting to the officer-in-charge, Ravellette spoke to Scott and told him that Day would be moved out of the cell that Monday. Scott replied that Monday was "fine" and that he could wait until then for Day to be moved. Based on these representations, Ravellette believed that any threat to Day's physical safety had been eliminated.

When Scott returned to the cell later that afternoon, Day, according to his own testimony, was "ready for him." The parties dispute what happened next. According to Day, Scott started stabbing him with a pen–a fight ensued, and Day sustained several scratches on his cheek, shoulder, and abdomen, two puncture wounds on his arm, and a bump on his head. Ravellette, on the other hand, testified that Day initiated the fight. Although Ravellette had not been in a position to see the inside of the cell during the incident, he could see the doorway. He testified by deposition that he saw Scott step partially inside the cell and then suddenly come back out. Day and Scott then began to grapple with each other; eventually Day ran downstairs with Scott chasing him. Scott's lip was bleeding, and he yelled at Ravellette that Day had hit him in the mouth. As a result of this incident, the prison's conduct adjustment board found Day guilty of fighting, determining that Day had instigated the fight.

Based on these facts, the district court concluded that Ravellette had not violated Day's Eighth Amendment rights. The court noted that if Day had initiated the fight he would have no Eighth Amendment claim because the duty to protect "is not triggered by scuffles which are provoked, and therefore are preventable, by a plaintiff himself." If, in the alternative, Scott initiated the fight, the court reasoned that Day still could not prevail because he did not satisfy either component of the Eighth Amendment standard: that the defendant had actual knowledge of a risk and that he consciously disregarded that risk. *See Pope v. Shafer*, 86 F.3d 90, 91–92 (7th Cir.1996) (per curiam). As to the first prong, the court found that upon Scott informing Ravellette that he could wait until Monday for Day to be moved, "actual knowledge of a risk to Day from Scott [could] no longer be attributed to Officer Ravellette." The court further determined that the "conscious disregard" component was not met because Ravellette, by immediately notifying his superiors of the problems between Day and Scott, had done all that was required of him in the situation.

On appeal Day first maintains that the district court's judgment for Ravellette is not supported by the evidence. As best we can discern from Day's briefs, the essence of his claim is that the district court's judgment should be reversed because Ravellette committed "a fraud on the court." Specifically, Day alleges that: (1) Ravellette misrepresented in his answer and in his motion for summary judgment that Day did not report Scott's threats to Ravellette, while later admitting at trial that Day did in fact report the threats; and (2) Ravellette's trial testimony that he could not see inside the cell during the fight revealed that he had made misrepresentations in his incident report–specifically, that he witnessed the fight and saw that Day was the instigator. Day is mistaken regarding the first of these points. In his answer and in his summary judgment motion, Ravellette merely states that Day did not submit "a *formal* request for protection" from Scott, and indeed, there is no such request contained in the record.

With regard to Day's second argument, even if Ravellette's incident report could be seen as inconsistent with his trial testimony, we do not think such inconsistencies undermine the district court's decision. The district court assumed for purposes of its analysis that Day did not initiate the fight and still concluded that he had not established an Eighth Amendment violation. Day's allegation that Ravellette lied about who instigated the fight is therefore relevant to the court's judgment only to the extent that Day is attempting to attack Ravellette's credibility. Indeed, Day's

statement in his brief that Ravellette "was making his story up as he went along to benefit himself" does appear to be a challenge to the district court's credibility determination.

Because this case went to trial, the district court's findings of fact will not be disturbed unless they are clearly erroneous, and the court's credibility determinations are entitled to particular deference. *Soto v. Johansen*, 137 F.3d 980, 981 (7th Cir.1998). As the Supreme Court stated in *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 575, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985), unless extrinsic evidence contradicts the witness's story or the story itself is "so internally inconsistent or implausible on its face that a reasonable factfinder would not credit it," a trial judge's credibility determination regarding that witness "can virtually never be clear error." Here, Day essentially argues that because Ravellette lied in his incident report, all his testimony at trial should be discounted. But the fact that Ravellette allegedly misrepresented what happened *during* the incident does not contradict his testimony that he took reasonable measures *before* to ensure Day's physical safety. Nor do we think that Ravellette's story is "so inconsistent or implausible on its face" that a reasonable factfinder could not credit it. The district court had a copy of Ravellette's report, which states in full:

> On 3–26–98 at approx. 14:10 p.m. I, [correctional officer] Ravellette, left wing officer of E housing unit asked [correctional officer] Bonner to open cell 219 for offender Scott, David # 852500 to go in. As offender Scott entered the cell, offender Day, Mark # 856097 sprang toward offender Scott and appeared to hit offender Scott in the mouth. The offenders scuffled for a while, then came out of the cell, still fighting, Offender Day then broke free and ran down the stairs and behind me. I kept the offenders apart until first responders arrived and took control of the situation. When I later asked offender Scott what happened to offender Day's arm he stated "I had my paperwork and my pen when we were fighting, that's probably how he got stuck." Or words to that effect.

We do not think that this account of the incident necessarily contradicts Ravellette's later testimony that he could not observe that part of the fight that occurred inside the cell. In fact, the report could be seen as consistent with Ravellette's testimony that he could see the doorway of the cell, that Scott stepped partially inside the cell and then suddenly came back out, that Day and Scott began grappling, and that Day ran downstairs with Scott chasing him. Indeed, when Ravellette was questioned at trial about the incident report, he testified that that report contained an accurate description of what he had witnessed, and that he still believed that Day had thrown the first punch. Although Day's interpretation of the evidence–that Ravellette falsely implied in his report that he witnessed the fight inside the cell–is also plausible, we do not think that Ravellette's story is "so inconsistent and implausible on its face" that all reasonable factfinders would discredit his testimony in its entirety. The district court appears to have discounted that portion of Ravellette's testimony that Day instigated the fight, but found credible his testimony about the protective measures he took to protect Day before the fight. Given our deferential standard of review, we cannot conclude that the district court clearly erred in this regard.

■ Day also challenges the district court's grant of summary judgment for defendant Barro. Summary judgment is

proper where, if the record at trial were identical to the record compiled in the summary judgment proceedings, the movant would be entitled to a directed verdict because no reasonable jury would bring in a verdict for the opposing party. *Frost Nat'l Bank v. Midwest Autohaus, Inc.,* 241 F.3d 862, 868 (7th Cir.2001); *Russell v. Acme–Evans Co.,* 51 F.3d 64, 70 (7th Cir. 1995). Under this standard we conclude that the district court erred in granting summary judgment for Barro on the ground that Day had not shown that Barro was personally involved in the alleged constitutional violation. The record of the summary judgment proceedings contains a statement by Barro that "Offender Day had requested a bed move to E–322 from E–219. This move was in the process of happening when [the incident between Day and Scott] occurred." We think a reasonable juror could infer from this that Barro had actual knowledge of the problems between Day and Scott, which was why he was attempting to move Day to another cell.

Nevertheless, we conclude that summary judgment for Barro was appropriately granted because Day did not present evidence showing that Barro acted with conscious disregard of the threat to Day's physical safety. Barro was in the process of moving Day to another cell when the fight occurred, and Day offered no evidence showing that Barro was aware that Day was in any imminent danger. Further, Day's own declaration states that "Barro was moving me to another bed in response to my request for protection due to my report of threats made against me by Scott." In light of this evidence, we think that no reasonable jury could conclude that Barro acted with conscious disregard to Day's safety. *See Lewis v. Richards,* 107 F.3d 549, 553 (7th Cir.1997) (to survive summary judgment on a failure-to-protect claim, the prisoner must show that

the defendants either took no precautions to avoid a known risk or that the precautions they took ignored that risk).

For the above reasons, the judgment of the district court is AFFIRMED.