116 F.3d 1482
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
RYMER FOODS, INC. Plaintiff-Appellee,
v.
MOREY FISH CO., Defendant-Appellant.
 No. 96-4139.
 United States Court of Appeals,
 Seventh Circuit.
 June 23, 1997.
 
 1
 Before BAUER, CUDAHY, and KANNE, JJ.
 
 ORDER
 
 2
 The judgment of the district court is affirmed on the opinion of the district court, (N.D.Ill.), dated October 28, 1996.
 
 
 3
 The opinion of the district court is attached.
 
 MEMORANDUM OPINION AND ORDER
 
 4
 ANN CLAIRE WILLIAMS, District Judge.
 
 
 5
 * 1 In this declaratory judgment action, Plaintiff Rymer Foods, Inc. ("Rymer") asks the court to declare that Rymer may keep money it received from Defendant Morey Fish Company ("Morey"). Both sides have moved for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. For reasons set forth below, the court grants Rymer's motion and denies Morey's motion.
 
 Background
 
 6
 Rymer is a Delaware corporation whose principal place of business is Chicago, Illinois. At all times relevant to this litigation, Mark Bailin was Vice President or (later) President of Rymer. (Rymer's 12(M) Statement pp 1, 7; Morey's 12(N) Statement pp 1, 7.)
 
 
 7
 Morey is a Minnesota corporation whose principal place of business is Motley, Minnesota. At all relevant times, William Frank was President of Morey, and Stephen Frank was Vice President and Director of Morey. Both William Frank and Stephen Frank own shares in Morey. Morey's Fish House is a trade name used by Morey Fish Company. The words "Morey's Fish House" appear on signs outside of each store facility owned by Morey. (Rymer's 12(M) Statement pp 2, 10, 11, 14, 15; Morey's 12(N) Statement pp 2, 10, 11, 14, 15.)
 
 
 8
 W.J.F. International, Inc. ("WJF") is a Minnesota corporation whose principal place of business is Minneapolis, Minnesota. At all relevant times, William Frank was President of WJF, and Stephen Frank was Vice President and Director of WJF. Both William Frank and Stephen Frank own shares in WJF. At all relevant times, WJF acted as a national sales agent for Morey; Stephen Frank purchased seafood on behalf of both WJF and Morey. (Rymer's 12(M) Statement pp 9-13; Morey's 12(N) Statement pp 9-13.)
 
 
 9
 The codfish dispute. In 1986, WJF ordered some codfish from Rymer. Stephen Frank (Vice President and Director of WJF) placed the order over the phone to Mark Bailin (then Vice President of Rymer). Rymer delivered some codfish, and WJF paid for it. More than a year later, WJF told Rymer that the type of codfish it had received was not the type it had ordered. WJF tried to return some of the codfish and demanded that Rymer pay damages. Rymer responded that the type of codfish it delivered was the type that WJF had ordered, stated that it was too late for WJF to return any of the codfish, and refused to pay damages to WJF. Rymer Foods, Inc. v. W.J.F. Int'l. Inc., No. 88 C 5082, Memorandum Opinion and Order dated Jan. 14, 1991, at 3-8.[1]
 
 
 10
 In 1987, in a matter unrelated to the codfish dispute between Rymer and WJF, Mark Bailin signed a consent decree which provided that Bailin would not solicit business from WJF or otherwise contact WJF. Id. at 11.
 
 
 11
 In 1988, while the codfish dispute between Rymer and WJF was stewing and Bailin's consent decree was in effect, Stephen Frank called Mark Bailin and ordered some fish from Rymer. In an effort to get around the consent decree, Stephen Frank and Mark Bailin agreed that Morey's Fish House (rather than WJF) would be listed as purchaser of the fish. Around the same time, an employee of WJF independently ordered some fish from Rymer. The invoices and other paperwork that Mark Bailin filled out for the orders from Stephen Frank and the WJF employee indicated that Morey's Fish House was the purchaser of the fish. Rymer delivered the fish to a cold storage facility, where title was transferred to WJF. Subsequently, Stephen Frank refused to pay Rymer for most of this fish until the codfish dispute between Rymer and WJF (described above) was resolved. Id. at 6-7, 11.
 
 
 12
 * 2 The first federal action. Rymer filed suit in federal district court, naming as defendants WJF as well as William J. Frank and Stephen W. Frank, doing business as Morey's Fish House. Rymer claimed that the defendants breached their 1988 contract with Rymer by refusing to pay for the fish they ordered and received. The defendants counterclaimed that Rymer breached its 1986 contract with WJF by delivering the wrong type of codfish. Two law firms filed appearances on behalf of the defendants: Popham, Haik, Schonobrich & Kaufman, Ltd., and Michael T. Hannafan & Associates, Ltd. (Rymer's 12(M) Statement p 23; Morey's 12(N) Statement p 23.)
 
 
 13
 After a bench trial, this court entered judgment in favor of Rymer, finding that Morey's Fish House breached its 1988 contract with Rymer by failing to pay for fish that it ordered and received from Rymer. 1/14/91 opinion at 19-20. The court found that Rymer did not breach its 1986 contract with WJF, because WJF let an unreasonable amount of time pass before inspecting and attempting to reject the codfish that it earlier purchased from WJF. Id. at 18-19.
 
 
 14
 In its opinion, the court stated that "the corporate entity Morey's Fish House" was liable for breaching its contract with Rymer. The court specifically rejected "the argument that Morey's Fish House is not a proper party to this suit." The court found that
 
 
 15
 Morey's was the entity that actually bargained for and contracted for the fish in the March and April of 1988 orders, and is therefore liable for its failure to pay for those orders. The court further notes that it cannot find corporate officers Stephen Frank and William Frank, or sister corporation W.J.F., liable for Morey's breach of contract without piercing the corporate veil, an action which the court feels would be inappropriate without hearing argument on this point by the parties.
 
 
 16
 Id. at 20.
 
 
 17
 In response to the parties' motions for modification, the court issued a second Memorandum Opinion and Order. Rymer Foods, Inc. v. W.J.F. Int'l. Inc., No. 88 C 5082, 1991 WL 47350 (N.D.Ill. April 1, 1991).[2] In that opinion, the court entered judgment against Morey Fish Company doing business as Morey's Fish House. The court reasoned that throughout discovery and trial "the parties recognized that the issue of Morey Fish Company's liability was a crucial element in this case" and that "the case was ultimately ruled on with the implicit understanding that Morey Fish Company was a proper defendant." Id. at * 1. In support of these statements, the court found that:
 
 
 18
 Morey's Fish House is a trademark, which is owned by Morey Fish Company. Morey Fish Company conducts retail sales through two Morey Fish Company store facilities, each of which has a sign outside the store for "Morey's Fish House." The court finds that in purchasing the cod fish order from Rymer, Morey Fish Company, the actual owner of the trademark, "Morey's Fish House," was doing business as Morey's Fish House. Of course, a trademark cannot do business on its own behalf; the owner of the trademark, however, can carry out business under the trademark name.
 
 
 19
 * 3 Id. at * 2. The court concluded that in 1988 Rymer contracted with Morey's Fish Company, doing business as Morey's Fish House. Id.
 
 
 20
 The state court action. None of the parties filed a motion for reconsideration or an appeal in the first federal action. However, Morey Fish Company filed an action in the Circuit Court of Cook County, Illinois to enjoin enforcement of this court's judgment in the first federal action. The Circuit Court dismissed the complaint for injunctive relief, and the appellate court affirmed. However, the Supreme Court of Illinois reversed, directing the Circuit Court to enjoin Rymer from enforcing this court's judgment in the first federal action. The Supreme Court of Illinois found that this court never obtained personal jurisdiction over Morey Fish Company in that Morey was never made a party to the first federal action and never voluntarily appeared in that action. Morey Fish Co. v. Rymer Foods, Inc., 632 N.E.2d 1020, 1024-25 (Ill.1994).
 
 
 21
 Morey's victory in its state court action was bittersweet. After this court rendered judgment in the first federal action, and after Morey filed its state court action, but before the Supreme Court of Illinois ruled in Morey's favor, Morey had paid Rymer $143,895.71--the amount of the judgment in the first federal action, plus interest and costs. Morey claims it made this payment "under protest," in order to prevent Rymer from proceeding against Morey's customers. After the Supreme Court of Illinois ruled in Morey's favor, Morey wrote a letter to Rymer demanding that Rymer return the $143,895.71 payment with interest. (Rymer's 12(M) Statement p 29, 31, 32; Morey's 12(N) Statement p 29, 31, 32; Morey's 12(M) Statement pp 10, 11.)
 
 
 22
 The second federal action. Rymer did not return the $143,895.71 to Morey. Instead, Rymer filed the present declaratory judgment action in federal district court. In the present action, Rymer asks the court to declare that Rymer may keep the $143,895.71 it received from Morey, on three alternative theories. First, Rymer argues that the judgment in the first federal action is enforceable against Morey, notwithstanding the ruling of the Supreme Court of Illinois that this court lacked personal jurisdiction over Morey in the first federal action. Second, Rymer argues that Morey is in privity with parties who participated fully in the first action, so that Morey is collaterally estopped from disputing that Morey (and not Rymer) breached the relevant contracts. Third, Rymer argues that--as a matter of undisputed fact--Morey (and not Rymer) breached the relevant contracts.
 
 
 23
 In prior rulings, this court rejected Rymer's first theory. Specifically, the court held that collateral estoppel barred this court from reconsidering the ruling of the Supreme Court of Illinois that this court lacked personal jurisdiction in the first federal action. Rymer Foods Inc. v. Morey Fish Co., No. 94 C 1239, 1994 WL 724854, at * 4 (N.D.Ill. Dec. 21, 1994).
 
 
 24
 * 4 In the present ruling, the court accepts Rymer's second theory. Specifically, the court finds that Morey is in privity with parties who participated fully in the first action, so that Morey is collaterally estopped from disputing that Morey (and not Rymer) breached the relevant contracts. Having accepted Rymer's second theory, the court finds it unnecessary to consider Rymer's third theory.
 
 Analysis
 
 25
 Both Rymer and Morey have moved for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. The court renders summary judgment only if the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Bratton v. Roadway Package Sys., Inc., 77 F.3d 168, 173 (7th Cir.1996) (quoting Fed.R.Civ.P. 56(c)). The court does not render summary judgment if "a reasonable jury could return a verdict for the nonmoving party." Sullivan v. Cox, 78 F.3d 322, 325 (7th Cir.1996) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). In ruling on a motion for summary judgment, the court views the facts in the light most favorable to the nonmoving party. Bratton, 77 F.3d at 171 (citation omitted); Sullivan, 78 F.3d at 325 (citation omitted).
 
 
 26
 On a motion for summary judgment, the moving party "bears the initial burden of showing that no genuine issue of material fact exists." Hudson Ins. Co. v. City of Chicago Heights, 48 F.3d 234, 237 (7th Cir.1995) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). Then the burden shifts to the nonmoving party, which "must set forth specific facts demonstrating that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); accord, NLFC, Inc. v. Devcom Mid-America, Inc., 45 F.3d 231, 234 (7th Cir.1995) (citations omitted), cert. denied, 115 S.Ct. 2249 (1995).
 
 I. RYMER'S MOTION FOR SUMMARY JUDGMENT
 
 27
 In its motion for summary judgment, Rymer argues that Morey is in privity with parties who participated fully in the first action, so that Morey is precluded from disputing that Morey (and not Rymer) breached the relevant contracts. Because Rymer brought its first action against Morey in federal court, federal principles determine the preclusive effects (if any) of the first action on Rymer's present action. As the Seventh Circuit has repeatedly stated, "[w]here the earlier action is brought in federal court, the federal rules of res judicata apply." EEOC v. Harris Chernin, Inc., 10 F.3d 1286, 1289 n. 4 (7th Cir.1993) (citing Barnett v. Stern, 909 F.2d 973, 977 (7th Cir.1990); In re Energy Coop., Inc., 814 F.2d 1226, 1230 (7th Cir.), cert. denied, 484 U.S. 928 (1987)); accord Porn v. National Grange Mut. Ins. Co., 93 F.3d 31, 33-34 (1st Cir.1996). This is true whether the first action is based on federal question jurisdiction or on diversity jurisdiction. J.Z.G. Resources, Inc. v. Shelby Ins. Co., 84 F.3d 211, 212-14 (6th Cir.1996); see Martino v. McDonald's Sys., Inc., 598 F.2d 1079 (7th Cir.) (using federal principles in federal question case to determine preclusive effect of prior judgment in diversity case), cert. denied, 444 U.S. 966 (1979); Restatement (Second) of Judgments § 87 (1982) ("Federal law determines the effects under the rules of res judicata of a judgment of a federal court.") & id. cmt. a, illus. 2 (applying rule in diversity context), cited in Energy Cooperative, 814 F.2d at 1230; Ronan E. Degnan, Federalized Res Judicata, 85 Yale L.J. 741 (1976) (arguing that the law of the court that renders a valid judgment should determine the res judicata effects of that judgment) & id. at 764-71 (applying rule in diversity context), cited in Energy Cooperative, 814 F.2d at 1230.
 
 
 28
 *5 In a classic discussion of the federal principles of issue and claim preclusion, the Supreme Court explained:
 
 
 29
 A fundamental precept of common-law adjudication, embodied in the related doctrines of collateral estoppel [or issue preclusion] and res judicata [or claim preclusion], is that a "right, question, or fact distinctly put in issue and directly determined by a court of competent jurisdiction ... cannot be disputed in a subsequent suit between the same parties or their privies...." Under collateral estoppel [or issue preclusion], once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation.
 
 
 30
 Montana v. United States, 440 U.S. 147, 153 (1979) (citations omitted); see Allen v. McCurry, 449 U.S. 90, 94 n. 5 (1980) (clarifying terminology). The Court went on to observe that
 
 
 31
 Application of [res judicata and collateral estoppel] is central to the purpose for which civil courts have been established, the conclusive resolution of disputes within their jurisdiction. To preclude parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions.
 
 
 32
 Montana, 440 U.S. at 153 (citations omitted).
 
 
 33
 Collateral estoppel or issue preclusion does not apply unless (1) the issue that one side seeks to preclude is identical to an issue involved in a prior action, (2) the issue was actually litigated in the prior action, (3) determination of the issue was essential to final judgment in the prior action, and (4) the party precluded from relitigating the issue was represented in the prior action. La Preferida, Inc. v. Cerveceria Modelo, S.A. de C.V., 914 F.2d 900, 906 (7th Cir.1990) (citing Klingman v. Levinson, 831 F.2d 1292, 1295 (7th Cir.1987); Gray v. Lacke, 885 F.2d 399, 406 (7th Cir.1989), cert. denied, 494 U.S. 1029 (1990)). With respect to the fourth element--whether the party precluded from relitigating the issue was represented in the prior action--"concepts summarized by the term privity are looked to as a means of determining whether the interests of the party against whom claim preclusion is asserted were represented in the prior litigation." Chase Manhattan Bank, N.A. v. Celotex Corp., 56 F.3d 343, 346 (2d Cir.1995). Although privity is an elusive concept, L & S Industries, Inc. v. Williams, 989 F.2d 929, 932 (7th Cir.1993), it generally denotes a relationship that is sufficiently close to justify issue or claim preclusion, First Options of Chicago, Inc. v. Kaplan, 913 F.Supp. 377, 383 (E.D.Pa.1996).
 
 
 34
 "Corporate affiliations may be relevant in determining whether two parties are in privity for purposes of issue or claim preclusion." In re Imperial Corp. of Am., 92 F.3d 1503, 1506 (9th Cir.1996) (citation omitted). In Martino v. McDonald's Sys, Inc., 598 F.2d 1079 (7th Cir.1979), for example, the Seventh Circuit found that a corporation was in privity with its sole shareholder under federal preclusion principles. On this basis the court concluded that the corporation could not relitigate certain issues that were (or should have been) litigated in an earlier diversity action against the sole shareholder. Id. at 1083 & n. 3; see Imperial Corp., 92 F.3d at 1506-08 (corporation in privity with officers and directors under federal preclusion principles); In re Belmont Realty Corp., 11 F.3d 1092, 1097 (1st Cir.1993) (corporation in privity with officer who participated in relevant transactions under federal preclusion principles); RTC Mortgage Trust 1994-S5 v. Quick, No. 93-2416, 1995 WL 156164, at * 3 (E.D.Pa. April 10, 1995) (corporation in privity with president-shareholder under federal preclusion principles); Cottonwood Holdings, Inc. v. C3, Inc., No. 94 Civ. 3438, 1995 WL 276196, at * 6 (S.D.N.Y. May 11, 1995) (corporation in privity with officer responsible for relevant transactions under federal preclusion principles); see also Studio Art Theatre of Evansville, Inc. v. City of Evansville, 76 F.3d 128, 131 (7th Cir.1996) (corporation in privity with its president under Indiana preclusion principles).
 
 
 35
 *6 It is beyond dispute that the first three elements are satisfied in this case. First, the issues that Rymer seeks to preclude--that Morey (and not Rymer) breached the relevant contracts--are identical to the issues litigated in the first federal action. Second, these issues were actually litigated in the first federal action. Third, determination of these issues was essential to final judgment in the prior action.
 
 
 36
 The fourth element--whether Morey was adequately represented in the first federal action--presents a more difficult question. Morey was not a formal party to Rymer's first action, as the Supreme Court of Illinois determined. However, Rymer argues that Morey was in privity with parties to the first federal action and therefore should be bound by this court's determination of the issues in that action. Although Rymer devotes most of its opening brief to this privity argument, Morey fails to dispute (or even address) Rymer's privity argument. By failing to address the argument, Morey in effect concedes that it is in privity with parties to Rymer's first action.
 
 
 37
 Even if Morey had addressed Rymer's privity argument, the court would still conclude that Morey was in privity with parties who fully participated in the first federal action. The defendants in the first federal action were WJF as well as William J. Frank and Stephen W. Frank, doing business as Morey's Fish House. Morey's Fish House is a trade name used by Morey. At all relevant times, William J. Frank was President of Morey, and Stephen W. Frank was Vice President and Director of Morey. Both William J. Frank and Stephen W. Frank own shares in Morey. Stephen W. Frank was involved in all transactions relevant to the first federal action and the present action. The law firms representing Morey in the present action represented all the defendants in the prior action. Under these particular circumstances, the court concludes that Morey is in privity with both William J. Frank and Stephen W. Frank, and that Morey's interests were fully represented in the first federal action. See Martino, 598 F.2d at 1083 & n. 3; see also Imperial Corp., 92 F.3d at 1506-08; Belmont Realty, 11 F.3d at 1097; Quick, 1995 WL 156164, at * 3; Cottonwood Holdings, 995 WL 276196, at * 6; see also Studio Art, 76 F.3d at 131.
 
 
 38
 Although this court did not have personal jurisdiction over Morey in the first federal action, it did have personal jurisdiction over parties who represented Morey's interest in that action: William J. Frank and Stephen W. Frank, doing business as Morey's Fish House. For this reason, Morey is now collaterally estopped from disputing the conclusions that this court reached in its 1/14/91 and 4/1/91 opinions: that Morey breached its 1988 contracts with Rymer, and that Rymer did not breach its 1986 contract with Morey. As the Supreme Court has stated, "[a] fundamental precept of common-law adjudication ... is that a 'right, question, or fact distinctly put in issue and directly determined by a court of competent jurisdiction ... cannot be disputed in a subsequent suit between the same parties or their privies....' " Montana v. United States, 440 U.S. 147, 153 (1979) (citations omitted).
 
 
 39
 * 7 In light of the conclusions stated above, the court grants Rymer's motion for summary judgment and declares that Rymer is entitled to retain the $143,895.71 that it received from Morey in 1991 in satisfaction of amounts due to Rymer for the purchase of fish by Morey.
 
 II. MOREY'S MOTION FOR SUMMARY JUDGMENT
 
 40
 In its motion for summary judgment, Morey asks the court to rule that Rymer should return the $143,895.71 to Morey. In support of its motion, Morey makes three arguments--none of them persuasive.
 
 
 41
 First, Morey argues that certain "judicial admissions" Rymer made in the first federal action bind Rymer in the present action. However, "a statement made in one lawsuit cannot be a judicial admission in another." Kohler v. Leslie Hindman, Inc., 80 F.3d 1181, 1185 (7th Cir.1996) (citing Murrey v. United States, 73 F.3d 1448, 1455 (7th Cir.1996)).[3] At best, a statement made in one lawsuit may serve as evidence in another lawsuit. However, Rymer's statements in the first federal action have no evidentiary value in the present action because--for reasons explained above--Morey is collaterally estopped from relitigating this court's specific finding in the first action that Morey breached its contract with Rymer.
 
 
 42
 Second, Morey argues that Rymer is collaterally estopped from arguing that Morey contracted with Rymer because the Supreme Court of Illinois considered and rejected that argument. However, collateral estoppel only applies to issues that were actually litigated and necessarily determined in a prior action. E.g., Anderson v. Financial Matters, Inc., No. 2-95-1444, 1996 WL 547854, at * 5 (Ill.App.Ct.2d Dist. Sept. 25, 1996).[4] While the Supreme Court of Illinois determined that this court lacked personal jurisdiction over Morey in the first federal action, the question whether Morey contracted with Rymer was not litigated, not decided, and not necessary to that determination. Therefore, Rymer is not collaterally estopped from asserting that it contracted with Morey.
 
 
 43
 Third, Morey argues that Rymer's declaratory judgment action is barred by the statute of limitations. However, the court already considered and rejected this argument in a prior opinion. Rymer Foods Inc. v. Morey Fish Co., No. 94 C 1239, 1995 WL 548595 (N.D.Ill. Sept. 13, 1995). In any event, the Illinois statute that Morey cites by its own terms does not apply to the instant action. That statute, 735 ILCS 5/13-207, applies to defendants pleading a "set-off"; but Rymer is not a defendant and is not pleading a "set-off."
 
 
 44
 Finding Morey's arguments unpersuasive, the court denies Morey's motion for summary judgment.
 
 Conclusion
 
 45
 For reasons set forth above, the court grants Rymer's motion for summary judgment and denies Morey's motion for summary judgment. The date for filing any motion or appeal related to this ruling will run from the date this Memorandum Opinion and Order is entered.
 
 END OF DOCUMENT
 
 
 [1]
 The court will refer to this opinion as the "1/14/91 opinion." Of course, findings of this court appearing in the 1/14/91 opinion may be disputed by the parties to the present action. However, none of the facts in this paragraph and the following two paragraphs that are imported from the 1/14/91 opinion are disputed, and--more importantly--none of these imported facts is material to the present cross-motions for summary judgment. As will become apparent in the analysis section below, the only material facts pertain to the issue of privity--the identity of and relationship among the parties to the first federal action and the parties to the present action
 
 
 [2]
 The court will use Westlaw citations for opinions available online. Although the 1/14/91 opinion is not available online, subsequent opinions are
 
 
 [3]
 To the extent that Walaschek & Associates, Inc. v. Crow, 733 F.2d 51, 54 (7th Cir.1984), and L.P. Larson, Jr., Co. v. Wm. Wrigley, Jr., Co., 253 F. 914, 918 (7th Cir.), cert. denied, 248 U.S. 580 (1918), hold otherwise, they do not reflect the present state of the law in this circuit
 
 
 [4]
 Illinois law determines the preclusive effects (if any) of a judgment rendered by an Illinois court. E.g., Studio Art Theatre of Evansville, Inc. v. City of Evansville, 76 F.3d 128, 130 (7th Cir.1995). In any event, the outcome would be same under federal law. See La Preferida, Inc. v. Cerveceria Modelo, S.A. de C.V., 914 F.2d 900, 906 (7th Cir.1990) (collateral estoppel only applies to issues that actually litigated and necessarily determined in prior action)