Terrance LOVE, Plaintiff,

v.

COOK COUNTY, ILLINOIS, Michael F. Sheahan, Sheriff of Cook County, James W. Fairman, Ernesto Velasco, Marcus Lyles, and Unknown Cook County Dept. of Corrections Employees, Defendants.

No. 99 C 1243.

United States District Court,
N.D. Illinois,
Eastern Division.

Jan. 28, 2000.

Terrance Love, Vienna, IL, pro se.

Mark Edward Ferguson, Shawn F. Fagan, Karen K. Dixon, Bartlit, Beck, Herman, Palenchar & Scott, Chicago, IL, for plaintiff.

Allen Stewart Kirsh, Schoenberg, Fisher, Newman & Rosenberg, Ltd., Chicago, IL, Lauren Klein, Cook County State's Attorney, Chicago, IL, for defendants.

## *MEMORANDUM AND OPINION*

LEVIN, United States Magistrate Judge.

At issue before the court is Defendants', Michael F. Sheahan ("Sheahan"), Sheriff of Cook County, James W. Fairman ("Fairman"), Former Executive Director of the Cook County Department of Corrections, Ernesto Velasco ("Velasco"), Executive Director of the Cook County Department of Corrections, and Marcus Lyles' ("Lyles"), Assistant Executive Director of the Cook County Department of Corrections (collectively referred to as "Defendants") Motion to Dismiss Plaintiff's Amended Complaint.

## *FACTUAL BACKGROUND*

On April 8, 1994, Plaintiff Terrance Love ("Love") entered the Cook County Jail as a pre-trial detainee charged with murder. (Am.Compl.¶ 14.) Love was originally assigned housing as part of the general population in Division 1, Tier H. On April 1, 1995, Love was moved to Tier B of Division 1 of the general population. *Id.*

On or about May 27, 1995, an inmate, who was housed in Tier A of Division 1,

and believed to be affiliated with the Vice Lords gang, was killed. (*Id.* at ¶ 15.) The following day, during a prison riot in Tier B, another inmate named Allen Fields was stabbed to death. Mr. Fields was believed to be associated with the Disciples gang, a gang hostile to the Vice Lords. (*Id.* at ¶ 16.)

Twenty-seven inmates were initially interviewed regarding the death of Allen Fields. Seven of these inmates were removed from Tier B, inspected and interviewed by detectives and employees of the Cook County Jail. (*Id.* at ¶ 18.) Five of the seven inmates removed from Tier B had blood stains on their clothing and shoes. Of these five inmates, four were Hispanic and believed to be associated with the Disciples. During their interviews with the investigators, these five inmates claimed that Terrance Love and three other individuals were responsible for killing Allen Fields. (*Id.* at ¶ 19.)

Based on the accusations by the five aforementioned prisoners, on May 29, 1995, Love was transferred from Tier B to the Division 10 segregation unit of the Cook County Jail. (*Id.* at ¶ 21.) Love was confined to a cell, which was ten square feet with concrete walls and no windows to the outside. The cell's metal door had a six-inch square window which looked into the interior corridor. Love was kept in this cell for periods of 23 consecutive hours, sometimes longer. He was allowed a maximum of one hour each day out of his cell, during which time he was shackled and prohibited from talking to other inmates or pre-trial detainees. (*Id.* at ¶ 23.) Love's confinement in the Division 10 segregation unit of the Cook County Jail lasted for more than two and one-half years.

Subsequent to Love's confinement, the five prisoners who allegedly identified Love as one of the men connected to the killing of Allen Fields recanted their statements implicating Love. (*Id.* at ¶ 25.) Both Love and his attorney filed grievances and wrote letters to each of the Defendants seeking an explanation of his detention and seeking release into the general population at the Cook County Jail. However, they did not receive any response to the inquiries. (*Id.* at ¶ 29–30.) Love never received a hearing at any time during his segregation.

On February 20, 1998, Love and the three other inmates charged with Allen Fields' murder were brought to trial on those charges. The trial judge dismissed all charges against Love and his co-defendants. (*Id.* at ¶ 34.) Love was released from segregation at that time.

## ANALYSIS

Defendants have filed a Motion to Dismiss Plaintiff's Amended Complaint Pursuant to Rules 12(b)(1) and 12(b)(6). Essentially: Defendants move to dismiss with prejudice Plaintiff's Amended Complaint in its entirety as to Defendants in their official and individual capacities, for lack of jurisdiction over the subject matter and/or for failure to state a claim for which relief can be granted.

### I. STANDARD OF REVIEW

On a motion to dismiss, the court takes all of the well-pleaded factual allegations as true and draws all reasonable inferences in the light most favorable to the plaintiff. *See, e.g., Wilczynski v. Lumbermens Mutual Casualty Co.*, 93 F.3d 397, 401 (7th Cir.1996). A complaint will not be dismissed on a motion to dismiss unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle him or her to relief. *Id.* A complaint need not set forth all relevant facts or recite the law. All that is required is a short and plain statement showing that the party is entitled to relief. FED.R.CIV.P. 8(a); *Doherty v. City of Chicago*, 75 F.3d 318, 322 (7th Cir.1996). A plaintiff in a suit in federal court need not plead facts. Conclusions may be pleaded as long as the defendant has at least minimal notice of the claim. FED. R.CIV.P. 8(a)(2); *Jackson v. Marion County*, 66 F.3d 151, 153–54 (7th Cir.1995).

The Seventh Circuit has recently held:

Under the federal rule of notice pleading, " 'all the Rules require is a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and *the grounds upon which it rests.*' " *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993) (*quoting Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (footnote and citation omitted)) (emphasis added). For fair notice to be given, "a complaint must at least 'include the operative facts upon which a plaintiff bases his claim.' " *Lucien v. Preiner,* 967 F.2d 1166, 1168 (7th Cir.1992) (*quoting Rodgers v. Lincoln Towing Service, Inc.,* 771 F.2d 194, 198 (7th Cir.1985)). A plaintiff "need not plead facts; he can plead conclusions. [However,] the conclusions must provide the defendant with at least minimal notice of the claim." *Jackson v. Marion County,* 66 F.3d 151, 153–54 (7th Cir.1995). The issue we review is whether "sufficient facts [have been] pleaded to allow the district court to understand the gravamen of the plaintiff's complaint." *Doherty v. City of Chicago,* 75 F.3d 318, 326 (7th Cir.1996).

*Kyle v. Morton High School,* 144 F.3d 448, 454–55 (7th Cir.1998); *See also Bennett v. Schmidt,* 153 F.3d 516, 518 (7th Cir.1998).

## II. LACK OF JURISDICTION

### A. Statute of Limitations

Defendants contend that Plaintiff's Amended Complaint should be dismissed for lack of jurisdiction because a portion of the time period that Plaintiff was housed in segregation, from May 29, 1995 through February 22, 1997, is barred by the statute of limitations. Defendants maintain that the only time period not barred by the statute of limitations is Plaintiff's remaining segregation from February 23, 1997 through February 20, 1998.

■ Defendants correctly point out that § 1983 claims brought in Illinois are subject to a two-year limitations period. Section 1983 itself does not contain a statute of limitations. Therefore, reference must be made to the limitations period prescribed by the state in which the litigation arose. 42 U.S.C. § 1983 (1988). In Illinois, where this litigation arose, the applicable statute of limitations for a personal injury action is two years. 735 ILCS 5/13–202. The Seventh Circuit has held that the two-year limitations period provided in 735 ILCS 5/13–202 controls Illinois-based § 1983 actions. *Farrell v. McDonough,* 966 F.2d 279, 280–82 (7th Cir.1992); *Kalimara v. Illinois Dept. of Corrections,* 879 F.2d 276, 277 (7th Cir.1989).

The parties disagree as to when the two-year statute of limitations began to run. Defendants contend that the portion of the time period that Plaintiff was housed in segregation, from May 29, 1995 through February 22, 1997, is barred by the statute of limitations. Defendants' position is premised on the general rule that a prisoner's pro se § 1983 complaint is deemed filed when it is delivered to prison officials for transmittal to the court. *Houston v. Lack,* 487 U.S. 266, 270, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988). The Defendants state that the relevant date, then, is February 22, 1999. Thus, Defendants apply the two-year statute of limitations from February 22, 1999 and conclude that Plaintiffs allegations regarding his time in segregation prior to February 22, 1997 are time barred.

Seeking to counter the above facts and law, Plaintiff argues that the alleged tortious act in this case is a "continuing violation," and therefore, the statute of limitations does not begin to run until the alleged tortious act(s) ceased (*i.e.,* until Plaintiff was released from segregation). Plaintiff relies on *Edmondson v. Coughlin,* 21 F.Supp.2d 242, 246 (W.D.N.Y. 1998), in which Plaintiff Edmunson brought a § 1983 claim alleging due process violations arising from the fact that he was housed in administrative segregation for eight months. The court there determined that "Plaintiff's claims are based on his continuous [administrative segregation] confinement between July

17, 1990 and March 22, 1991. Plaintiff thus asserts a continuing violation of his rights for statute of limitations purposes. *Cornwell v. Robinson,* 23 F.3d 694, 703 (2d Cir.1994). Plaintiff contends that his claims accrued, and the statute began to run at the time of his release from [administrative segregation], March 22, 1991. *Id.*"

■ The *Edmonson* and *Abiff*[1] cases cited by Plaintiff are District Court cases outside this Circuit. In the Seventh Circuit, "[c]ivil rights claims ... accrue when the plaintiff knows or should know that his or her constitutional rights have been violated." *Wilson v. Giesen,* 956 F.2d 738, 740 (7th Cir.1992). Plaintiff did not bring this action until February 22, 1999. Plaintiff was placed in segregation on May 29, 1995. The Plaintiff clearly knew or should have known of the alleged constitutional civil rights violation of which he claims well before the trigger date of February 22, 1997. Accordingly, Plaintiff's claim for the period from May 29, 1995 through February 22, 1997 is barred by the statute of limitations.

### B. Res Judicata

Defendants have also moved to dismiss Plaintiff's Amended Complaint on the grounds that the instant case is barred by the doctrine of res judicata.

"Under the federal common law of res judicata, a subsequent suit is barred if the claim on which it is based arises from the same incident, events, transactions, cir-

cumstances, or other factual nebula as a prior suit that had gone to final judgment." *Okoro v. Bohman,* 164 F.3d 1059, 1062 (7th Cir.1999). *See also Wilson v. City of Chicago,* 120 F.3d 681, 687 (7th Cir.1997); *Andersen v. Chrysler Corp.,* 99 F.3d 846, 852–53 (7th Cir.1996) (citations omitted). Only a "'judgment **on the merits**'" can have res judicata effect. *Okoro,* 164 F.3d at 1063 (emphasis added).

■ Defendants' claim that Plaintiff's case is barred based on the fact that Plaintiff's earlier Federal Court Complaint (case number 97 C 6119), which also alleged that Plaintiff was being unlawfully detained in administrative detention, was subsequently dismissed. Defendants argue that the instant case arose from the same factual situation and evidence as in the earlier case, 97 C 6119. In other words, Plaintiff maintained, in both cases, that he was unlawfully housed in administrative segregation and was not allowed sufficient time out of his cell. Respectfully, Defendants' argument is misplaced.

Plaintiff has correctly pointed out that Judge Castillo's Order dismissing the 1997 case with prejudice was entered pursuant to 28 U.S.C. § 1915.[2] Section 1915 was enacted as part of the Prison Litigation Reform Act of 1996 which gave courts discretionary power to dismiss frivolous or malicious suits brought in forma pauperis. *See* 28 U.S.C. § 1915. The United States Supreme Court, in *Denton v. Hernandez,* 504 U.S. 25, 112 S.Ct. 1728, 118 L.Ed.2d 340, held that "[b]ecause a § 1915(d)[3] dis-

---

**1.** *Abiff v. Slaton,* 806 F.Supp. 993, 996 (N.D.Ga.1992).

**2.** Judge Castillo's order states:

The Court's review of this *pro se* complaint indicates that it is deficient because it does not establish a constitutional violation which would give rise to monetary damages. The plaintiff is in administrative detention while awaiting trial for the murder of another inmate. He asserts that he should receive one hour of recreation for every 23 hours, but instead only receives one hour every 27 to 31 hours. This allegation simply does not support his requested relief of $1,000,000 and does not establish a

constitutional violation. *See Watts v. Ramos,* 948 F.Supp. 739 (N.D.Ill.1996). *See also Thomas v. Ramos,* 130 F.3d 754 (7th Cir.1992) (official who refused segregation inmate's exercise privileges for 70 days was entitled to qualified immunity). Plaintiff's complaint is therefore dismissed with prejudice and his motion for appointment of counsel and applications to proceed *in forma pauperis* are also denied.
Plaintiff is assessed one strike pursuant to 28 U.S.C. Section 1915(g)....

**3.** *Denton v. Hernandez* dealt with a dismissal pursuant to § 1915(d). That section was subsequently reclassified as 28 U.S.C. § 1915(e)(2). It provides that:

missal is not a dismissal on the merits, but rather an exercise of the court's discretion under the in forma pauperis statute, the dismissal does not prejudice the filing of a paid complaint making the same allegations."[4] Accordingly, Plaintiff's claim is not barred by res judicata.

### C. Collateral Estoppel

 Defendants also contend that Plaintiff's Amended Complaint should be dismissed on the grounds that the instant case is barred by the doctrine of collateral estoppel. Collateral estoppel or issue preclusion does not apply unless:

> (1) the issue that one side seeks to preclude is identical to an issue involved in a prior action, (2) the issue was actually litigated in the prior action, (3) determination of the issue was essential to final judgment in the prior action, and (4) the party precluded from relitigating the issue was represented in the prior action.

*Rymer Foods, Inc. v. Morey Fish Co.,* 1997 WL 358870, *5 (7th Cir.1997). *See La Preferida, Inc. v. Cerveceria Modelo, S.A. de C.V.,* 914 F.2d 900, 906 (7th Cir. 1990) (*citing Klingman v. Levinson,* 831 F.2d 1292, 1295 (7th Cir.1987); *Gray v. Lacke,* 885 F.2d 399, 406 (7th Cir.1989), *cert. denied,* 494 U.S. 1029, 110 S.Ct. 1476, 108 L.Ed.2d 613 (1990)).

Defendants contend that Plaintiff is barred from suing Assistant Director Lyles, whom he sued as a party in the prior case (97 C 6119). Furthermore, Defendants argue that Plaintiff is also barred from suing Defendants Sheahan, Fairman and Velasco, who were not named as parties in the prior case, but were, for the sake of this Motion, in privity with Lyles. This court disagrees.

As discussed *supra,* because Plaintiff's first action was not a final judgment/dismissal on the merits, "but rather an exercise of the court's discretion under the in forma pauperis statute, the dismissal does not prejudice the filing of a paid complaint making the same allegations." *Denton,* 504 U.S. at 34, 112 S.Ct. 1728. In addition, Plaintiff did not "actually litigate" the issue of whether or not his detainment in administrative segregation was lawful, and according to Judge Castillo's order dismissing the prior action, Plaintiff was assessed one strike pursuant to 28 U.S.C. § 1915(g). Accordingly, Plaintiff is not barred by collateral estoppel from suing Defendants Lyles, Sheahan, Fairman and Velasco.

### III. FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

#### A. Official Capacity

Defendants maintain that Plaintiff has failed to plead a cognizable claim against them in their official capacity. They argue that Plaintiff's allegations pertain solely to his own situation, and they fail to rise to the magnitude of a policy or widespread practice affecting other inmates. (*See* Def. Mot. at 6–7.)

 In order for a plaintiff to succeed in an official capacity suit under § 1983, the plaintiff must allege that he or she

---

(2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that—
(A) the allegation of poverty is untrue; or
(B) the action or appeal—
(i) is frivolous or malicious;
(ii) fails to state a claim on which relief may be granted; or
(iii) seeks monetary relief against a defendant who is immune from such relief.

**4.** Plaintiff's first case (97 C 6119) was dismissed by Judge Castillo pursuant to § 1915(g). That section provides that:

In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

suffered a deprivation of a constitutionally protected interest, and that the deprivation was caused by an official policy, custom or usage of the municipality. *Monell v. Department of Social Services of City of New York,* 436 U.S. 658, 690–91, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978). Specifically, our Seventh Circuit, in *Baxter by Baxter v. Vigo County School Corp.,* 26 F.3d 728, 735 (7th Cir.1994) (citations omitted), stated that in order to plead an official capacity suit, a plaintiff must show:

> (1) an express policy that, when enforced, causes a constitutional deprivation, (2) a widespread practice that, although not authorized by written law or express municipal policy, is "so permanent and well settled as to constitute a 'custom or usage' with the force of law," or (3) an allegation that the constitutional injury was caused by a person with "final policymaking authority."

"[N]ormally, the mere allegation of a single act of unconstitutional conduct by a municipal employee[s] will not support the inference that such conduct was pursuant to official policies. On the other hand, where the plaintiff alleges a pattern or a series of incidents of unconstitutional conduct, then the courts have found an allegation of policy sufficient to withstand a dismissal motion." *Powe v. City of Chicago,* 664 F.2d 639, 650 (7th Cir.1981). In this case, Defendants contend that Plaintiff's allegations pertain solely to his own situation, such that they fail to rise to the magnitude of a policy or widespread practice. This court agrees.

■ Plaintiff argues that his detention continued for an extraordinarily long period, during which he used every means at his disposal to petition appropriate Cook County officials for relief. (*See* Pl.Resp. at 8; Am.Compl ¶¶ 41–46.) It is Plaintiff's contention that Defendants, who had policymaking authority, knowledge of Plaintiff's unlawful detention and the power to take corrective action, all did nothing. *Id.* This, according to Plaintiff, amounts to a *de facto* policy which sanctioned deliberate and reckless disregard of his rights. *Id.*

"A policy, custom, or practice can take the form of: (1) an ordinance or written directive; (2) a persistent custom that rises to the level of a *de facto* policy; or (3) an action taken by an official policymaker." *Hayes v. Myles,* 1999 WL 356298, *3 (N.D.Ill.1999); *McTigue v. City of Chicago,* 60 F.3d 381, 382 (7th Cir.1995).

Plaintiff's allegations herein fall short of alleging a *de facto* policy. It is important to note that courts have recognized a difference between pleading a *de facto* policy, which is sufficient to survive a motion to dismiss, and pleading a single or isolated incident, which, generally, is not sufficient to survive a motion to dismiss. The United States Supreme Court, in *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 823–24, 105 S.Ct. 2427, 2436, 85 L.Ed.2d 791 (1985), stated that "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell,* unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which can be attributed to a municipal policymaker."

Plaintiff has alleged what amounts to a random, isolated incident directed solely against him, and he has not plead the essential elements of any recognized official capacity claim. Accordingly, Plaintiff has failed to plead a cognizable claim against the Defendants in their official capacity, and Defendants' Motion to Dismiss Plaintiff's Amended Complaint is granted as to Plaintiff's official capacity claims.

**B. Individual Capacity**

■ Defendants have also moved to dismiss Plaintiff's Amended Complaint on the ground that Plaintiff has failed to plead a cognizable claim against them in their individual capacity. Plaintiff must prove two elements in order to successfully advance his individual capacity claims under 42 U.S.C. § 1983:(1) that the defendants were acting under color of state law; and (2) that the conduct of the defendants deprived plaintiff of a federal right. *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68

L.Ed.2d 420 (1981).[5] Plaintiff must allege facts that the Defendants were personally involved in the deprivation of his constitutional rights. *Gossmeyer v. McDonald*, 128 F.3d 481, 494 (7th Cir.1997); *See Black v. Lane*, 22 F.3d 1395, 1401 (7th Cir.1994). "[A]n official meets the 'personal involvement' requirement when she acts or fails to act 'with deliberate or reckless disregard of plaintiff's rights or if the conduct causing the constitutional deprivation occurs at her direction or with her knowledge or consent.'"*Id.* at 1401. *See Soto v. Johansen*, 137 F.3d 980, 981 (7th Cir.1998). "Moreover, there must be a 'causal connection or affirmative link between the misconduct complained of and the official sued.'" *Mitchell v. Fairman*, 1997 WL 224990, *2 (N.D.Ill.1997) (*quoting Estate of Porter by Nelson v. Illinois*, 36 F.3d 684, 688 (7th Cir.1994)). *See also Soto v. Johansen*, 137 F.3d at 981.

▮ The Supreme Court has held that "[m]isuse of power, possessed by virtue of a state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken 'under color of state law . . . .'" *United States v. Classic*, 313 U.S. 299, 326, 61 S.Ct. 1031, 85 L.Ed. 1368 (1941). In any case, a plaintiff must demonstrate that a government official "knowingly, willfully, or at least recklessly caused the alleged deprivation by his action or failure to act." *Rascon v. Hardiman*, 803 F.2d 269, 274 (7th Cir.1986).

Defendants argue that Plaintiff has failed to allege facts to demonstrate that he sustained any constitutional deprivation or that Defendants placed and kept Plaintiff in segregation with the intention of punishing him. (*See* Def.Mot. at 8.) The parties agree that Plaintiff was charged with murdering an inmate while he was incarcerated at the Cook County Jail, and that Plaintiff was not brought to trial for the in-jail murder charges until February 20, 1998, at which time all charges stemming from the in-jail murder were dismissed and he was released from segregation. Defendants contend that they had a legitimate basis for placing Plaintiff into segregation after he was charged with the in-jail murder: so that there would be no further violent confrontation between the Plaintiff and the rival gang members. (*See* Def. Reply at 4.) Defendants maintain that Plaintiff's placement in segregation was not arbitrary or purposeless, but rather was done to protect Plaintiff and the other inmates. *Id.*

▮ Plaintiff avers that in his Amended Complaint, he alleged that each of the Defendants was aware of his situation, and that despite this knowledge, the Defendants condoned the mistreatment of the Plaintiff and turned a "blind eye" to the violations of his rights. (*See* Pl.Resp. at 7.) Also, Plaintiff argues that the long duration of his confinement in segregation itself supports the inference of Defendants' knowledge and punitive intent. *Wilson v. Seiter*, 501 U.S. 294, 300, 111 S.Ct. 2321, 2325, 115 L.Ed.2d 271 (1991).[6] Plaintiff's argument that his Amended Complaint showed Defendants' punitive intent is based on his being held in segregation and

5. *Parratt v. Taylor* was overruled on other grounds by the United States Supreme Court in *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). The Court in *Daniels* held that the Due Process Clause is not implicated by a *negligent* act of an official who caused an unintended loss of or injury to life, liberty or property. The requirements of an individual capacity claim, however, were not overruled by *Daniels*.

6. Plaintiff also argues that Defendants never responded to his grievances, letters or written requests to explain his detention in segregation as support for his conclusion that Defendants acted knowingly. However, Plaintiff still has the burden of showing that the communication(s) gave Defendants notice to alert them to an "excessive risk to inmate health or safety." (citations omitted) "Once the official knows of that risk, the refusal or declination to exercise the authority of his or her office may reflect deliberate disregard." *Vance v. Peters*, 97 F.3d 987, 993 (7th Cir.1996). Plaintiff has failed to plead what information, if any, he communicated in writing to Defendants regarding his safety. Plaintiff's allegations fail to show that Defendants acted with deliberate disregard as to his health or safety.

on the "comments of Jail officials—that Mr. Love 'killed that guy,' and that 'we know you did it.'" (*See* Pl.Resp. at 3; Am.Comp. ¶¶ 36–40.) Plaintiff has not attributed these comments to any specific named Defendants, nor, for the reasons stated by Defendants in their briefs, has he adequately alleged that Defendants acted or failed to act "'with deliberate or reckless disregard of plaintiff's rights or [that] the conduct causing the constitutional deprivation occur[ed] at [their] direction or with [their] knowledge or consent.'" *Black,* 22 F.3d at 1401.

Plaintiff has failed to show that Defendants "knowingly, willfully, or at least recklessly caused the alleged deprivation by [their] action or failure to act." *Rascon v. Hardiman,* 803 F.2d 269, 274 (7th Cir. 1986). Furthermore, Plaintiff has failed to adequately allege that he sustained a constitutional deprivation. Plaintiff's Amended Complaint does not plead a specific deprivation of any constitutional right. Rather, Plaintiff has merely plead that he was housed in segregation for an extended time period. This does not rise to the level of a constitutional deprivation that is required in order to sufficiently state a claim against Defendants in their individual capacities. Accordingly, Plaintiffs' claims in his Amended Complaint against Defendants in their individual capacities are dismissed.[7]

## IV. QUALIFIED IMMUNITY

Defendants request that this court strike Plaintiff's claim, against them in their official and individual capacities based on their qualified immunity. "Under the doctrine of qualified immunity, 'governmental officials performing discretionary functions are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Kernats v. O'Sullivan,* 35 F.3d 1171, 1176 (7th

Cir.1994) (*quoting Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). Since the United States Supreme Court's decision in *Harlow,* courts have implemented an objective test for determining whether the shield of qualified immunity applies. *See Triad Assoc., Inc. v. Robinson,* 10 F.3d 492, 496 (7th Cir.1993).

"Once a defendant has pleaded a defense of qualified immunity, it is appropriate for courts to approach the issue using a two-step analysis: (1) does the alleged conduct set out a constitutional violation? and (2) were the constitutional standards clearly established at the time in question?" *Kernats,* 35 F.3d at 1176. *See Siegert v. Gilley,* 500 U.S. 226, 231–32, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991); *Donovan v. City of Milwaukee,* 17 F.3d 944, 947 (7th Cir.1994). "The plaintiff bears the burden of establishing the existence of a clearly established constitutional right." *Kernats,* 35 F.3d at 1176. (citations omitted)

Plaintiff in this case was a pretrial detainee at the time he was placed into administrative segregation. "A pretrial detainee is a defendant in a criminal case who has not been convicted, but is awaiting trial in a place of confinement where the state can be sure to find him at the appropriate time." *Hawkins v. Poole,* 779 F.2d 1267 (7th Cir.1985). *See Bell v. Wolfish,* 441 U.S. 520, 538–39, 99 S.Ct. 1861, 1873–74, 60 L.Ed.2d 447 (1979). In order to determine whether a pretrial detainee's constitutional rights have been violated, "[i]t must be determined whether restrictions and conditions accompanying pretrial detention constitute punishment in the constitutional sense of the word. It is up to the court to decide whether the disability is imposed for the purpose of punishment or is imposed only as incident of some other legitimate government purpose." *Id.*

---

7. The court also finds that the punitive damage claim against the Defendants in their individual capacity must be dismissed. On this issue, the Plaintiff has also not sufficiently alleged operative facts as to the essential element(s) of bad faith or the exhibition of reckless or callous indifference to Plaintiff's rights by Defendants.

Defendants contend that a reasonable person in Defendants' positions would have believed that holding Plaintiff in segregation did not violate any of Plaintiff's rights, but rather promoted the safety of other inmates in the jail, and Plaintiff's safety. (*See* Def.Mot. at 12.) Furthermore, Defendants argue, Plaintiff has failed to meet his threshold burden of establishing a violation of a clearly established constitutional right with respect to the amount of time he claims he was allowed to be out of his cell. *Id.* This court agrees.

Plaintiff maintains that at the time he was placed in segregation, and throughout the time the Defendants kept him there without hearing or explanation, the law was more than sufficiently clear to apprise them that Plaintiff's arbitrary segregated confinement constituted unconstitutional punishment. (*See* Pl.Resp. at 10.) Plaintiff has the burden of alleging that the restrictions on his confinement were punishment. *Crane v. Logli*, 1992 WL 123155 *2 (N.D.Ill.1992). *See Salazar v. City of Chicago*, 940 F.2d 233, 240 (7th Cir.1991). "If a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to punishment." *Id. See Wolfish*, 441 U.S. at 539, 99 S.Ct. 1861; *Hawkins*, 779 F.2d at 1269. While the court is mindful that Plaintiff's segregation was lengthy, Plaintiff has not met his burden of establishing that this placement in administrative segregation was punishment and a requisite constitutional violation. Therefore, Defendants' motion based on qualified immunity is allowed.[8]

### CONCLUSION

In view of the foregoing, the Defendants' 12(b)(1) Motion is granted in part and denied in part. Defendants' Rule 12(b)(6) Motion is granted. Plaintiff Love is granted 28 days to amend his Complaint to seek to cure the Rule 12(b)(6) (including qualified immunity) deficiencies.

---

8. Defendants further argue that Plaintiff's allegation of muscle atrophy resulting from his confinement in administrative segregation was insufficient to plead a constitutional violation. (*See* Def.Mot. at 14.) Also, Defendants aver that Plaintiff's claim that there was only a small six inch by six inch window set in the metal door to the cell does not amount to pleading a constitutional violation. *Id.* Plaintiff did not allege that he was deprived of proper ventilation or sufficient lighting. *Id.* This court agrees.